UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **NETLIST, INC.**, <br><br> Plaintiff, <br><br> vs. <br><br> **SMART STORAGE SYSTEMS, INC., SMART WORLDWIDE HOLDINGS, INC., AND DIABLO TECHNOLOGIES, INC.**, <br><br> Defendant. | Case No.:13-cv-5962-YGR <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |

Plaintiff Netlist, Inc. ("Netlist") filed a Second Amended Complaint ("SAC") alleging seven claims for relief: (1) correction of inventorship and ownership under 32 U.S.C. sections 256, 262; (2) breach of the parties' non-disclosure agreement; (3) breach of the parties' supply agreement; (4) Lanham Act trademark infringement, 15 U.S.C. section 1114(a); (5) Lanham Act deceptive advertising, 15 U.S.C. 1125(a); (6) misappropriation of trade secrets under the California Uniform Trade Secrets Act, Cal. Civil Code section 3426 *et seq.* ("CUTSA"); and (7) Unfair Competition, California Business & Professions Code section 17200 ("Section 17200"). (Dkt. No. 146.)

Presently before the Court is the Motion of Diablo Technologies, Inc. ("Diablo"): (1) pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Counts Two, Three, Six, and Seven of plaintiff Netlist, Inc.'s ("Netlist") Second Amended Complaint ("SAC"); and (2) pursuant to Federal Rule of Civil Procedure 12(c) for a judgment on the pleadings concerning Count Six (Dkt. No. 155.) More specifically, Diablo seeks an order dismissing Netlist's claims for misappropriation of trade secrets, breach of contract, and unfair competition because: (1) the claims are barred by the applicable statutes of limitation; (2) the trade secrets are insufficiently alleged; and (3) the Section 17200 claim is preempted by CUTSA.

Having carefully considered the papers submitted and the pleadings in this action, as well as the record of the action herein, the Court **ORDERS** that the motion is: (1) **GRANTED IN PART WITHOUT LEAVE TO AMEND** as to the 17200 claim (Count Seven) *only* to the extent the claim is based upon the trade secret misappropriation allegations; and (2) **DENIED IN PART** on the grounds that the claims are time-barred and the trade secrets are not stated with sufficient specificity.

## I.   BACKGROUND

The Court briefly summarizes the relevant allegations of the SAC as follows:

Diablo and Netlist entered into a non-disclosure agreement (the "NDA") on March 20, 2008. (SAC ¶ 15.) Shortly thereafter, on September 10, 2008, Diablo and Netlist entered into a Development and Supply Agreement (the "Supply Agreement") whereby Diablo would design, manufacture, and supply certain products for Netlist. (SAC ¶ 19.)

In September 2008 and in May 2009, Diablo filed certain provisional patent applications with the Patent and Trademark Office ("PTO"). (SAC ¶ 22.) On September 14, 2009, Diablo filed a patent application claiming the benefit of the first and second provisional patent applications. (*Id.*) Netlist protested each of these applications. (*Id.*) On March 18, 2010, the PTO published Diablo's application. On May 28, 2013, the PTO issued the patent. (SAC ¶ 25.)

Meanwhile, on February 8, 2011, Diablo filed another provisional patent application with the PTO, which disclosed a memory module having an architecture similar to Netlist's HyperCloud® product, and which included further portions of the confidential technical information that Netlist had provided to Diablo. That application is still pending. (SAC ¶ 26.)

In 2012, Netlist discovered that Diablo allegedly was offering Netlist's HyperCloud® chipset under its own name, the VT-Berlinetta LR. Netlist is informed and believes that the VT-Berlinetta LR utilizes Netlist's Trade Secrets, including the DxD/LRD technologies. Diablo's openly boasted use of those features which was contrary to the scope of the license extended to Diablo through the Supply Agreement. (SAC ¶¶ 28, 29.) Netlist alleges that this conduct was a breach of both the NDA and the exclusivity of the license extended by Netlist to Diablo under the Supply Agreement and sent several demand letters to Diablo before formally terminating the Supply Agreement with Diablo in or about July 2012. (SAC ¶ 30.) However, Diablo continued to

market the VT-Berlinetta LR and used Netlist's HyperCloud® trademark to promote it.  (SAC ¶ 31.)

Netlist filed its original complaint in this action on July 1, 2013, alleging only antitrust violations, unfair competition, and fraud on the PTO and on the JEDEC standard setting body.[1] (Dkt. No. 1.)  Thereafter, on August 12, 2013, Diablo and Defendant SMART Storage Systems, Inc. announced a new product, the ULLtraDIMM memory module.  (SAC ¶ 38.)  Netlist filed its First Amended Complaint on August 23, 2013, adding claims for patent infringement, trademark infringement, trade secret misappropriation, correction of inventorship, and breach of contract.  (Dkt. No. 5.)[2]

On March 21, 2014, Netlist filed its SAC and served on Diablo an amended Trade Secret Disclosure pursuant to California Code of Civil Procedure section 2019.210, identifying sixty-one trade secrets alleged to have been misappropriated.  Netlist alleges that, in spite of the NDA and obligations not to maintain the confidentiality of Netlist's proprietary and trade secret information Diablo used that information in designing and developing the ULLtraDIMM. (SAC ¶35.)  More specifically, Netlist alleges that the ULLtraDIMM memory module employs misappropriated Netlist Trade Secrets including multiple aspects of its DxD/LRD technologies not disclosed in any of the patents. (SAC ¶ 36.)  Further, Netlist asserts that it received information (after the filing of the original and first amended complaints) in the form of an anonymous letter which bolstered its information that Diablo had stolen Netlist's proprietary register and isolation device chips for use in the ULLtraDIMM product.  (SAC ¶ 37.)

Netlist's Amended Trade Secret Disclosure details approximately 60 technical trade secrets alleged to have been acquired by Diablo from Netlist, and then misappropriated in the VT-

---

[1] JEDEC, formerly known as the Joint Electron Device Engineering Council, is an independent semiconductor engineering trade organization and standardization body. *See* http://en.wikipedia.org/wiki/JEDEC, last visited September 3, 2014.

[2] This action was transferred from the Central District of California at the time a motion to dismiss certain claims in the First Amended Complaint was pending. (See Dkt. No. 105 at 14, holding motion to dismiss and motion for judgment on the pleadings in abeyance pending determination of whether remaining claims would be transferred to the Northern District).  Pursuant to the parties' stipulation, a Second Amended Complaint was filed on March 21, 2014.

Berlinetta LR chipset and/or the ULLtraDIMM product, including: (a) LRD/DxD chipset architecture, including communication control architecture, control information extraction, Write-Leveling operations, and Chipset pin definitions and operation modes; (b) ASIC Controller architecture, including multiplexing proprietary and standard operations, rank register controller, and access control architecture; (c) Isolation Switch device architecture; and (d) novel features in Netlist's architecture for Memory Module Self-Test. (SAC ¶¶ 21, 27-30, 35-36, 39.)

## II.   ANALYSIS

### A.   Statute of Limitations

Diablo moves to dismiss Netlist's claims for trade secret misappropriation, breach of contract, and unfair competition in violation of Section 17200 on the grounds that the claims are all time barred. Under California law, "[a]n action for misappropriation must be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered." Cal. Civ. Code § 3426.6. Claims for breach of contract and violation of Section 17200 are both subject to a four-year statute of limitations. Cal. Code Civ. Proc. § 337 (imposing four year limitations period for any "action upon any contract, obligation or liability founded upon an instrument in writing"); Cal. Bus & Prof. Code § 17208. "If the expiration of the applicable statute of limitations is apparent from the face of the complaint, the defendant may raise a statute of limitations defense in a Rule 12(b)(6) motion to dismiss." *In re Brocade Commc'ns Syst., Inc. Derivative Litig.*, 615 F. Supp. 2d 1018, 1035 (N.D. Cal. 2009).

Diablo argues that Netlist's claims for breach of contract and misappropriation of trade secrets are based on events that occurred more than four years before they were first alleged in Netlist's August 23, 2010 amended complaint. Diablo argues that Netlist's claims rely on the alleged disclosure by Diablo of Netlist's trade secret information in connection with Diablo's 2008 patent applications and the March 2010 issuance of the '917 Patent, both known to Netlist at the time of their occurrence. Thus Diablo contends the claims are barred by the applicable three- and four-year statutes of limitation. Diablo further argues that Netlist cannot contradict its earlier allegations to avoid the limitations bar by now asserting that the misappropriation did not occur until the later discovery of the VT-Berlinetta LR chipset and ULLtraDIMM memory module.

4

First, the FAC included allegations that "Diablo intentionally misappropriated Netlist's trade secret information in designing and developing ULLtraDIMM," using information provided "in confidence under the protections of the Supply Agreement and the NDA." (First Amended Complaint ¶ 49.) Thus, Diablo's argument that Netlist should be judicially estopped from making the "new" argument that the misappropriation was based on misuse of trade secret information in connection with the ULLtraDIMM product fails. *Cf. In re Hoopai*, 581 F.3d 1090, 1097 (9th Cir. 2009) (declining to apply the equitable, discretionary doctrine where the court found that party was not taking a position inconsistent with its prior position); *Yanez v. United States*, 989 F.2d 323, 327 (9th Cir. 1993) (declining to apply judicial estoppel where two positions taken by plaintiff were "not necessarily inconsistent"). Here, the allegations of the SAC do not contradict those of the FAC, but simply focus the matters at issue to the trade secrets misappropriated in connection with the VT-Berlinetta LR chipset and ULLtraDIMM memory module.

Further, Netlist sufficiently alleges that the latter trade secrets are distinct from the information disclosed in the patent and patent applications. Diablo is correct that the first discovered or discoverable misappropriation of a trade secret commences the limitation period. *Cadence Design Sys., Inc. v. AvantA Corp.*, 29 Cal. 4th 215, 223 (2002). However, Netlist disclaims reliance on any proprietary information disclosed in connection with the '917 Patent or applications. Instead, the SAC alleges the patent applications and issuance as a *backdrop* for the operative trade secret misappropriation allegations, which are focused on the use of specified trade secrets in marketing the VT-Berlinetta LR chipset and in designing and manufacturing the ULLtraDIMM memory module. Netlist alleges that Diablo used and disclosed trade secrets, including multiple aspects of its DxD/LRD technologies, *not disclosed in any of the patents*. (SAC ¶ 36.) Netlist alleges that it did not discover the use of its information in connection with the VT Berlinetta chipset until 2012, and did not discover Diablo's use of alleged trade secrets in the ULLtraDIMM product until SMART Storage's public announcement of the partnership with Diablo and provision of ULLtraDIMM samples to certain customers on August 12, 2013. (SAC ¶ 38.) Thus, the events alleged to form the basis for the claims occurred in 2012 and 2013.

Diablo argues that even if the trade secrets alleged to have been misappropriated in connection with the VT-Berlinetta LR and ULLtraDIMM are not the same as the information that alleged to have been used in connection with the patent applications, the two sets of information are related. Therefore, Diablo asserts, the alleged use of the first secrets started the time limit running as to the others. Diablo cites the decision California Court of Appeal in *Glue-Fold*, which stated:

> We agree with the federal court which stated that 'California law assumes that once a plaintiff knows or should know that a particular defendant cannot be trusted with one secret, it is unreasonable for that plaintiff simply to assume that that defendant can be trusted to protect other secrets.'

*Glue-Fold, Inc. v. Slautterback Corp.*, 82 Cal. App. 4th 1018, 1027 (2000) (quoting *Intermedics, Inc. v. Ventritex, Inc.*, 822 F. Supp. 634, 654 (N.D. Cal. 1993)). However, the *Glue-Fold* case concerned repeated misappropriations of the *same* trade secret information, rendering its endorsement of the federal district court's decision in *Intermedics dicta*.

*Intermedics*, in turn, was a case where the district court granted summary judgment after a jury made findings of fact that the misappropriation within the limitations period concerned trade secrets that were related to and overlapping with those disclosed outside the period. *Intermedics*, 822 F. Supp. at 639, 654. Other decisions cited by Diablo similarly relied on an evidentiary showing that the trade secrets at issue in the litigation were related to or "encompass[ed]" by trade secret information the plaintiff knew had been disclosed or used much earlier than the beginning of the limitations period. *See MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1109 (N.D. Cal. 2012) (finding claims time-barred where judicially noticeable documents demonstrated that an earlier litigation concerned trade secrets that "largely encompass[ed] the material described in" the later complaint); *HiRel Connectors, Inc. v. United States*, 465 F. Supp. 2d 984, 991 (C.D. Cal. 2005) (granting summary judgment for federal defendants where evidence of publication of a draft specification encompassed sufficient revelation of the same trade secret information to trigger running of statute of limitations such that misappropriations claim filed more than three years later was untimely); *Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 526 (N.D. Cal. 2000) (on summary judgment, undisputed facts showed that plaintiff shared all the trade secrets during the same time period, within same relationships, and they all concerned related matters); *see also*

*Monolith Portland Midwest Co. v. Kaiser Aluminum & Chem. Corp.*, 407 F.2d 288, 293 (9th Cir. 1969) (affirming judgment finding claims foreclosed by limitations after trial on the merits).

Unlike the cases cited by Diablo, the SAC here unequivocally alleges that the "various misappropriated Netlist Trade Secrets…*are not disclosed in the '917 Patent*…." (SAC ¶ 36, emphasis added.) Indeed, Netlist specifies numerous trade secrets in the SAC and in its Amended Trade Secret Disclosure which it alleges are distinct from the proprietary information disclosed in the earlier patent applications. Thus, the Court cannot find that Netlist's alleged basis for the misappropriation and breach of contract claims is time-barred on the face of the SAC. Whether the trade secret information and breaches of the agreement alleged are sufficiently related to or encompassed by the prior disclosures in connection with the '917 Patent application presents a fact issue that cannot be decided on a motion under FRCP 12(b)(6) or 12(c).

The motion to dismiss on statute of limitations grounds is, therefore, **DENIED**.

### B. Allegations Inconsistent with Trade Secret Disclosure

Diablo argues that the trade secret claim should be dismissed for the further reason that the SAC does not clearly and consistently identify the misappropriated trade secrets. Diablo contends that the SAC provides only vague descriptions of the trade secrets, and does not correspond with Netlist's March 21, 2014 Amended Trade Secret Disclosure.

To state a claim under CUTSA, a plaintiff must plead facts sufficient to show: "(1) the existence of subject matter which is capable of protection as a trade secret; (2) that the secret was disclosed to the defendant under circumstances giving rise to an obligation not to use or disclose the secret to the detriment of the discloser; and (3) the defendant either used the trade secret or disclosed it to a third party." *MedioStream*, 869 F. Supp. 2d at 1113 (citing *GlobeSpan, Inc. v. O'Neill*, 151 F. Supp. 2d 1229, 1235 (C.D. Cal. 2001)).

The Court finds the allegations here more than adequate. Netlist's SAC, coupled with its Amended Trade Secret Disclosure describe the trade secrets and alleged misappropriation with sufficient specificity. Nothing more must be alleged to avoid dismissal at the pleading stage. *Dealertrack, Inc. v. Huber,* 460 F.Supp. 2d 1177, 1183-84 (C.D. Cal. 2006) (denying motion to dismiss where plaintiff sufficiently identified "FEX System" as the trade secret); *Therapeutic*

*Research Faculty v. NBTY, Inc.*, 488 F. Supp. 2d 991, 999-1000 (E.D. Cal. 2007) (identification of "confidential username and passcode" sufficient); *Diodes, Inc. v. Franzen*, 260 Cal.App.2d 244, 252 (1968)).[3]

Diablo further argues that the SAC does not allege that Diablo disclosed all of the alleged trade secrets in violation of any agreement not to disclose. Diablo contends that the NDA, by its terms, only applied to "DxD/LRD technology," and not the ASIC Controller architecture, Isolation Switch Device Architecture, or Memory Module Self-Test architecture.

This argument is completely at odds with the allegations of the SAC and the copy of the NDA attached to it. The NDA defines "Confidential Information" as "any and all information concerning the Disclosing Party, or its business, that is disclosed by Disclosing Party to Receiving Party, whether orally or in writing, that derives value by not being generally known to others and shall include, without limitation…[broad and inclusive examples]." (SAC, Exh. 1, ¶ 1.)  As the SAC details:

> The NDA expressly states it is designed for Netlist and Diablo to "exchange certain Confidential Information … for the limited and exclusive purpose of exploring the possibility of having Diablo embed elements of Netlist's proprietary and patented DxD/LRD technology into Diablo products, for Netlist's exclusive use (the 'Business Purpose')."

(SAC ¶15.)  The NDA makes a clear distinction between the "Business Purpose"—which relates to DxD/LRD technology—and "Confidential Information" that might be exchanged between the parties. Applicable to *all* confidential information, the Supply Agreement provides in part:

> **Nondisclosure and Nonuse**. Each party shall treat as confidential all Confidential Information of the other party, shall not use such Confidential Information except as set forth in this Agreement, and shall use reasonable efforts not to disclose such Confidential Information to any third party …

(SAC ¶19(a).)  Thus, all Confidential Information was covered. Disclosure of information covered within that broad definition would be contrary to the terms of the NDA and the Supply Agreement.[4]

---

[3] Diablo also argues that "Netlist has failed to identify which trade secrets were allegedly contained in Diablo's *patent* applications." (Mtn. at 11, emphasis supplied.)  This straw-man argument fails.  Netlist's allegations do not rely on alleged trade secrets *in the patent applications*, but on trade secrets alleged to have been misappropriated by use in the VT-Berlinetta LR chipset and ULLtraDIMM product.

8

Consistent with the foregoing, the motion to dismiss on the grounds that the trade secrets at issue are not sufficiently alleged is **DENIED**.

### C. Preemption of Unfair Competition Claim

Diablo next argues that the 17200 claim should be dismissed as preempted by CUTSA, at least to the extent the claim is based on alleged trade secret misappropriation. At the hearing, Netlist conceded that a Section 17200 claim based on the misappropriation allegations would be duplicative of other claims and preempted. *See K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 958, 961 (2009) (interference with contract and unfair competition claims preempted by CUTSA).

The motion to dismiss is therefore **GRANTED** to the extent the Section 17200 claim relies on the misappropriation allegations. However, the Section 17200 claim remains viable on the other alleged bases: (1) that "Diablo materially breached both the NDA and the Supply Agreement with Netlist;" and (2) the alleged Lanham Act violation.

### III. CONCLUSION

The motion to dismiss is **GRANTED IN PART WITHOUT LEAVE TO AMEND** as to that portion of the 17200 claim based upon allegations of trade secret misappropriation. The motion is otherwise **DENIED**.

Defendants shall file their answer to the SAC no later **September 24, 2014.**

This Order terminates Docket No. 155.

**IT IS SO ORDERED**.

Date: September 4, 2014

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[4] Diablo also argues that "Netlist has failed to identify which trade secrets were allegedly contained in Diablo's patent applications." (Mtn. at 11.) This straw-man argument fails. Netlist's allegations do not rely on alleged trade secrets *in the patent applications*, but on trade secrets alleged to have been misappropriated by use in the VT-Berlinetta LR chipset and ULLtraDIMM product.