1    [Counsel listed on signature pages]

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                          OAKLAND DIVISION

11   NETLIST, INC.,                          CASE NO. 4:13-CV-05889 YGR
                                             CASE NO. 4:13-CV-05962 YGR
12                 Plaintiff,
                                             **UPDATED JOINT CASE**
13         v.                                **MANAGEMENT STATEMENT**

14   SMART STORAGE SYSTEMS, INC., and        Judge:   Hon. Yvonne Gonzalez Rogers
     DIABLO TECHNOLOGIES, INC.,              Crtm:    1, 4th Floor
15                                           Date:    September 22, 2014
                   Defendants.               Time:    2:00 p.m.
16

17

18   NETLIST, INC.,

19                 Plaintiff,

20         v.

21   DIABLO TECHNOLOGIES, INC.,

22                 Defendant.

23

24

25

26

27

28
     2458.000/847984.5

Pursuant to the Court's Order of August 21, 2014 [Dkt. No. 249] and the Standing Order for All Judges of the Northern District of California for Contents of Joint Case Management Statement, Plaintiff Netlist, Inc. ("Netlist") and Defendants Diablo Technologies, Inc. ("Diablo") and SMART Storage Systems, Inc. ("SMART Storage") submit this Updated Joint Case Management Conference Statement.

### 1.   Jurisdiction And Service:

The Court has jurisdiction over the asserted patent and trade secret claims, and counterclaims thereto, under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1338 (a) (actions asserting claims of patent infringement), and 28 U.S.C. § 2201 and 2202 (declaratory judgment). Venue is also appropriate in this District.  All defendants have been served.  No party is challenging jurisdiction or venue.

### 2.   Facts:

Netlist is a corporation organized under the laws of the State of Delaware, with its principal place of business at 51 Discovery, Suite 150, Irvine, California 92618.

Diablo is a corporation organized under the laws of the Canada, with its principal place of business at 80 Aberdeen Street, Suite 401, Ottawa, Ontario, K1S 5R5 Canada.

SMART Storage is a wholly owned subsidiary of SanDisk Corporation.  SanDisk Corporation ("SanDisk") is a Delaware corporation with its principal place of business at 951 SanDisk Drive, Milpitas, California 95035.

In Case No. 4:13-cv-05889 (the "'5889 Case" or "Patent Case"), Netlist alleges that Diablo and SMART Storage infringe the Patents-in-Suit[1] by making, using, importing, selling, and/or offering to sell memory modules that are covered by the claims of the Patents-in-Suit. Diablo and SMART Storage assert that they do not infringe the Patents-in-Suit and that the claims of the Patents-in-Suit are invalid.[2]

---

[1] The Patents-in-Suit include U.S. Patent Nos. 7,881,150; 8,001,434; 8,081,536; 8,301,833; 8,359,501; 8,516,185; and 8,516,187.

[2] Diablo previously filed a declaratory judgment action (Case No. 4:13-cv-03901; the "'3901 Case") seeking a ruling that Diablo did not infringe certain of the Patents-in-Suit and that such patents are invalid.  The '3901 Case was administratively closed after being consolidated into the

In Case No. 4:13-cv-05962 (the "'5962 Case" or "Trade Secret Case"), Netlist asserts claims against Diablo for correction of inventorship and ownership of U.S. Patent 8,452,917, currently assigned to Diablo, for breach of contract, trademark infringement, misappropriation of Netlist's Trade Secrets, and unfair competition under Cal. Bus. & Prof. Code § 17200, *et seq.*

In the Trade Secret Case, Diablo counterclaims to assert, *inter alia*, that Netlist has breached its obligations under the Supply Agreement between Netlist and Diablo in misappropriating proprietary technology designed and developed by Diablo in which Diablo has all rights, title, and interest in.  Further, Netlist's misappropriation of Diablo's trade secrets gives rise to liability for unfair competition under California Bus. & Prof. Code § 17200.

Netlist notes that Diablo has not yet filed its counterclaims, which are currently due on September 26, 2014.

**3.      Legal Issues:**

The legal issues in the Patent Case include:

*Issues Identified by Netlist*

- The proper construction of claims of the Patents-in-Suit;
- Whether Diablo infringed and continues to infringe, directly or indirectly by contributing to or inducing the infringement of others, the asserted claims of the Patents-in-Suit, by directly or indirectly making, using, selling, importing, or offering to sell ULLtraDIMM memory modules;
- Whether SMART Storage infringed and continues to infringe, directly or indirectly by contributing to or inducing the infringement of others, the asserted claims of the Patents-in-Suit, by directly or indirectly making, using, selling, importing, or offering to sell ULLtraDIMM memory modules;
- Whether Diablo's infringement has been willful;
- Whether SMART Storage's infringement has been willful;
- Whether the Patents-in-Suit are valid and enforceable;

'5889 Case.

1  •  What damages are adequate to compensate Netlist for the infringement by

2    Diablo;

3  •  What damages are adequate to compensate Netlist for the infringement by

4    SMART Storage;

5  •  Whether Netlist's claims are barred by the various equitable and legal defenses

6    raised by Diablo and SMART Storage; and

7  •  Whether the case is "exceptional" within the meaning of 35 U.S.C. § 285,

8    entitling the prevailing party to reasonable attorneys' fees.

9  _Issues Identified by Defendants_

10  •  Whether Defendants are entitled to declaratory judgment of non-infringement

11    the patents-in-suit;

12  •  Whether Defendants are entitled to declaratory judgment of invalidity of the

13    patents-in-suit;

14  •  Whether Netlist materially breached the Supply Agreement between Netlist

15    and Diablo by Netlist's failure to provide Forecasts according to its obligations

16    under the Supply Agreement.

17  The legal issues arising from the claims and counterclaims alleged in the Trade Secret

18 Case are as follows:

19  _**Issues Identified by Netlist**_

20  •  Whether the inventorship and ownership of U. S. Patent No. 8,452,917 ("the '917

21    patent") should be corrected under 35 U.S.C. §§ 256 and 262;

22  •  Whether Diablo materially breached the Non-Disclosure Agreement and the

23    Supply Agreement between Netlist and Diablo;

24  •  Whether Diablo violated the Lanham Act, 15 U.S.C. §§ 1114(a), 1125(a), by its

25    improper and willful infringement of the HyperCloud® registered trademark and

26    by creating confusion or mistake as to the origin of Diablo's goods;

27  •  Whether Diablo is liable under California Civil Code section 3426 _et seq._ for

28    misappropriation of Netlist's Trade Secrets; and

-3-

1      • Whether Diablo is liable for unfair competition under California Bus. & Prof.

2      Code § 17200.

3      *Issues Identified by Diablo*

4      • Whether Netlist materially breached the Supply Agreement between Netlist and

5      Diablo, including the Settlement Agreement incorporated by Amendment;

6      • Whether Netlist is liable for unfair competition under California Bus. & Prof.

7      Code § 17200; and

8      • Whether Diablo has an affirmative defense under the equitable doctrine of

9      unclean hands to claims brought by Netlist arising out of or relating to the Supply

10      Agreement between Netlist and Diablo, including the Settlement Agreement

11      incorporated by Amendment.

12      **4.     Motions:**

13          **A.     Motions Anticipated By Netlist**

14      In the Patent Case, Netlist anticipates filing a motion for leave to add SanDisk as a named

15   Defendant.  While SMART Storage claims that is a wholly-owned subsidiary of SanDisk,

16   SanDisk's marketing materials and SEC filings suggest otherwise.  Despite numerous requests,

17   SMART Storage has yet to provide any documents confirming its relationship with SanDisk or

18   evidencing the entities involved in the manufacture and sale of the accused products.  If the

19   parties are unable to resolve this issue shortly (and certainly prior to the Case Management

20   Conference scheduled for September 22, 2014), Netlist will file its motion for leave.

21      SMART Storage notes that it would agree to stipulate to SanDisk's addition as a party

22   under Federal Rule of Civil Procedure 25(c) as SanDisk acquired SMART Storage on August 22,

23   2013, and SMART Storage remains a wholly-owned subsidiary.

24      In the Trade Secret Case, Netlist anticipates filing a motion for preliminary injunction on

25   or about October 1, 2014.

26      Netlist also notes that Diablo has not yet filed its counterclaims, which are currently due

27   on September 26, 2014.  Depending on the allegations and claims, Netlist reserves its right to file

28   a motion to dismiss some or all of the counterclaims.

-4-

1    As discussed further below, Netlist does not believe any motion by Diablo to seek to limit

2    Netlist's trade secrets is appropriate or timely.  In any event, any narrowing of the asserted trade

3    secrets must await completion of fact discovery and then can be further analyzed in connection

4    with expert discovery.

5                    **B.        Motions Anticipated by Diablo**

6    In the Trade Secret Case, Diablo anticipates filing a motion for narrowing the number of

7    trade secrets being asserted as being misappropriated should the CMC not resolve this issue

8    earlier.  Diablo also intends to move for summary judgment as to Netlist's claims brought in

9    breach of the parties Supply Agreement that confers ownership of the asserted intellectual

10   property rights to Diablo, not Netlist, as improperly asserted by Netlist in its complaint.  Diablo

11   also intends to file a motion for fee-shifting for discovery costs in the event Netlist refuses to

12   comply with the stipulated to ESI order (Dkt. No. 231).  Diablo has served key discovery on

13   August 27, 2014, which specifically requests that Netlist identify where the alleged trade secrets

14   are embodied in the ID and RD chips at issue and after the depositions of key Netlist witnesses

15   Dr. Hyun Lee and CEO C.K. Hong, on October 9 and 10.  Diablo respectfully requests that the

16   Court enter a briefing schedule for the Preliminary Injunction motion that would allow Diablo to

17   take this discovery before its opposition is due.

18                   **C.        Motions Anticipated by SMART Storage**

19   SMART Storage anticipates filing a renewed motion to stay the litigation, once the PTO

20   issues a decision on whether to institute SMART Storage's and Diablo's respective requests for

21   inter partes review (IPR) of the patents-in-suit.

22       **5.        Amendment of Pleadings:**

23   As noted above, Netlist intends to seek leave to add SanDisk as a named Defendant in the

24   Patent Case.

25   As noted above, SMART Storage would agree to stipulate to SanDisk's addition as a party

26   under Federal Rule of Civil Procedure 25(c).

27   The parties currently do not contemplate amending the pleadings in any other manner.

28

-5-

**6.     Evidence Preservation:**

Each party represents that it has reviewed the Guidelines Relating to the Discovery of Electronically Stored Information and has instituted reasonable document retention procedures so as to maintain any relevant documents, electronic or otherwise, or any other relevant electronically recorded material.  The parties have further entered into a separate ESI Order [Dkt. No. 231], which will govern the preservation and production of information in these cases.

**7.     Disclosures:**

In the Patent Case, Netlist and Diablo exchanged initial disclosures in accordance with Fed. R. Civ. P. 26 on December 2, 2013, and Netlist served an updated initial disclosure on May 16, 2014.  SMART Storage served its initial disclosures in the Patent Case in accordance with Fed. R. Civ. P. 26 on February 12, 2014.

In the Trade Secret Case, Netlist and Diablo exchanged initial disclosures on May 16, 2014.

**8.     Discovery:**

Discovery is ongoing.  Pursuant to this Court's prior order, discovery in the Patent Case and Trade Secret Case has been consolidated.  In this trade secret case, Netlist and Diablo have served multiple sets of discovery requests.  The parties have also identified custodians from whom e-mails will be produced pursuant to the parties' ESI protocol.  Netlist has also taken depositions of two former Diablo employees.  Additional depositions have been noticed and additional depositions will be noticed in the near future.

**a.     Joint Statement Regarding Pending Email Discovery**

Netlist informally requested email discovery on August 27, 2014, but properly propounded on September 3.  After the initial request returned a very high number of "hits," the parties met and conferred to limit the requests.  As of September 15, 2014, the parties had agreed upon searches for two email custodians—Mr. Badalone and Mr. Paillard.  Netlist and Diablo also agreed that Diablo will produce only the documents containing "hits," but that Netlist will be able to request upon meeting and conferring for a reasonable number of related documents (such as attachments or parent documents) for specific documents or specific searches.  Diablo expects to

-6-

1   produce emails responsive to the narrowed searches beginning on September 19 on a rolling

2   basis.  After evaluating the results of this process, the parties will revisit the email requests for the

3   remaining custodians.

4        Netlist reserves the right to evaluate the effectiveness of this procedure by requesting a

5   sample of "null set" documents and Diablo will review and provide a report on the percentage of

6   responsive to unresponsive documents.

7        **b.**     **Netlist's Position on Other Discovery Issues**

8        During the course of discovery, Diablo's former counsel, Steptoe & Johnson, agreed to

9   produce certain documents and information responsive to Netlist's claims.  Such production is not

10  yet complete.  Steptoe & Johnson recently sought to withdraw from the case.  Netlist is working

11  with Diablo's current counsel, McDermott, Will & Emery, to confirm that Steptoe & Johnson has

12  produced or logged (or has provided to McDermott for production/logging in the very near

13  future) all "Key Documents," as that term is defined by the parties' ESI order.  Netlist believes

14  that Steptoe & Johnson should not be allowed to withdraw from this case until it makes such a

15  representation.

16       **c.**     **Diablo's Position on Other Discovery Issues**

17       Diablo disagrees with Netlist that it gets to define which counsel represents Diablo.

18  Diablo recently replaced its counsel from Steptoe & Johnson to McDermott, Will & Emery LLP.

19  Steptoe has withdrawn as Diablo's counsel (*see e.g.,* Dkt. No. 254).  Steptoe has provided to

20  McDermott as of August 29, all of the documents collected from Diablo.  Diablo's current

21  counsel is actively working with Netlist's counsel to determine that *both* parties have in fact

22  produced "Key Documents" and are in the process of remedying any such deficiencies.

23       Recently, Diablo propounded three additional sets of discovery (RFPs, RFAs and

24  Interrogatories) on Netlist on August 27, 2014 to which Diablo has yet to receive a response.  In

25  view of the multiple outstanding discovery requests propounded by parties, it is unlikely that any

26  party is able to confirm at this time that it has produced and logged all "Key Documents" in this

27  case.

28       Further, during a meet and confer on September 3, Diablo counsel requested that Netlist

-7-

UPDATED JOINT CASE MANAGEMENT STATEMENT
CASE NOS. 13-CV-5889 YGR & 13-CV-5962 YGR

narrow its 61 trade secrets and 51 patent claims down to a reasonable number as is the practice in this jurisdiction[3].  Diablo counsel also requested that Netlist provide a schedule to do so as part of this CMC statement.  Netlist provided no such proposal, but Diablo provides such proposal below in Section 17.

In light of the fact that Diablo has new counsel, there are multiple outstanding discovery requests from all parties that require time for resolution, an extension of discovery dates along with the addition of dates for narrowing the number of trade secrets and patent claims case is respectfully requested.

### d.      Netlist's Response on Other Discovery Issues

As discussed below, Netlist opposes Diablo's request for an extension of the discovery or trial dates, and also opposes Diablo's proposed additional dates for "narrowing" the trade secret and patent claims.

### 9.     Class Actions:

N/A.

### 10.     Related Cases:

As noted above, this Court issued its Related Case Order relating *Diablo Technologies, Inc. v. Netlist, Inc.* (Case No. 4:13-cv-03901-YGR) to the Patent Case.  (Dkt No. 127 in the '5889 Case.)  The '3901 Case has been administratively closed.

In addition, in June 2014, Diablo and SMART Storage filed petitions for *inter partes* review of the Patents-in-Suit.  (*See* IPR2014-00882; -00883; -00970; -00971; -00982; -00994; -01011; and -01029)  On August 23, SMART Modular (which is no longer a Defendant in these matters) filed additional petitions for *inter partes* review of certain of the Patents-in-Suit.  (*See*

---

[3] *See Brocade Communications Sys. Inc. v. A10 Networks, Inc*., Case No. 10-cv-03428-LHK, Dkt. No. 197, Minute and Case Management Order (N.D. Cal. August 30, 2011) (Brocade ordered to narrow its case for trial by submitting a proposal indicating which of its patent and trade secret claims it intends to take to trial one week after fact discovery cutoff).  *See* also *Brocade Communications Sys. Inc. v. A10 Networks, Inc*., Case No. 10-cv-03428-LHK, Dkt. No. 363, Minute Order, Case, Case Management Order and Order Relating Case (N.D. Cal. November 30, 2011) ("By December 15, 2011 Brocade will identify the 20 copyrights that it will pursue in this case.  By January 31, 2012 Brocade will identify the (1) 20 trade secrets, (2) 10 patent claims, and (3) five copyrights that it will pursue in this case").

-8-

IPR2014-01369-01375.)  The Patent Office has not instituted any of these requested proceedings.

**11.**    **Relief:**

In the Patent Case, the parties seek the following relief:

*Relief Sought by Netlist*

- Judgment that the Patents-in-Suit are each valid, enforceable and infringed by Diablo, and SMART Storage (along with SanDisk in the event that it is added to the case);
- A preliminary and permanent injunction enjoining the alleged infringers and their officers, agents, servants, employees, subsidiaries and affiliated companies, and those persons acting in active concert or participation therewith, from engaged in the aforesaid unlawful acts of patent infringement;
- An award of damages arising out of each infringer's acts of patent infringement, together with pre-judgment and post-judgment interest;
- Judgment that damages be trebled in accordance with 35 U.S.C. § 284;
- An order declaring this case exceptional and awarding Netlist its attorneys' fees;
- Costs incurred in this action, pursuant to 35 U.S.C. § 285; and
- Such other and further equitable or legal relief as the Court or a jury deems proper.

*Relief Sought by Defendants*

- A declaration that Defendants have not infringed, and do not infringe, any valid and enforceable claim of the Patents-in-Suit;
- A declaration that the asserted claims of the Patents-in-Suit are invalid;
- In the Trade Secret Case, the parties seek the following relief:

*Relief Sought by Netlist*

- A preliminary and a permanent injunction enjoining Diablo, its officers, agents, employees, subsidiaries and affiliated companies, and all persons acting in active concert or participation therewith, including SMART and SanDisk, from engaging in trade secret misappropriation or  breaches of contract, including, without limitation, prohibiting any further marketing, promotion, or sale of the ULLtraDIMM product until all of the Netlist Trade Secrets and proprietary technology are eliminated from the ULLtraDIMM;

-9-

- An award of damages and/or reasonably royalties to compensate Netlist for Diablo's breaches of contract, misappropriation and other wrongful conduct;

- An award of restitution and disgorgement of Diablo's ill-gotten gains from its wrongful conduct;

- Exemplary damages and attorneys' fees under Cal. Civil Code sections 3426.3 and 3426.4 for Diablo's misappropriation of Netlist's Trade Secrets;

- Specific performance of certain provisions of the NDA and Supply Agreement, including but not limited to provisions requiring the return of Netlist's confidential information, and an injunction enjoining Diablo's continued use of Netlist's confidential information;

- An award of Diablo's profits, damages and costs, and attorneys' fees in connection with its wrongful use of the HyperCloud® trademark, pursuant to 15 U.S.C. § 1117(a), trebled pursuant to 15 U.S.C. § 1117(b), and statutory damages pursuant to 15 U.S.C. § 1117(d);

- An order directing the Patent Office to correct the inventorship of the '917 patent to join Dr. Hyun Lee and Thomas Bryan as inventors of the '917 patent, and judgment declaring that Netlist is a joint owner of the '917 patent; and

- Such other and further equitable or legal relief as the Court or jury deems proper.

*Relief Sought by Diablo*

- Judgment that Netlist's counterclaims are barred in whole or in part under principles of equity, including without limitation, laches, prosecution laches, estoppel, patent misuse and/or unclean hands.

- Judgment against Netlist for breaching the Supply Agreement between Netlist and Diablo, including the Settlement Agreement incorporated by Amendment;

- Judgment against Netlist for unfair competition under California Bus. & Prof. Code § 17200;

- An award of attorneys' fees and costs to Diablo as proscribed by under California Bus. & Prof. Code § 17200;

-10-

- A finding that this case is "exceptional" and an award to Diablo of its attorneys' fees and costs;

- An injunction barring Netlist and its affiliates, subsidiaries, officers, directors, agents, representatives, servants, employees, licensees, successors, assigns, and those persons in active concert with them from inflicting further competitive harm to Diablo pursuant to California Bus. & Prof. Code § 17200;

- An award to Diablo for compensatory damages on its breach of contract counterclaim;

- An award to Diablo of pre-judgment and post-judgment interest on its damages; and

- Such other and further relief as the Court deems appropriate and just.

**12.** **Settlement and ADR:**

The parties have met and conferred regarding the ADR process and agree either private mediation before a selected mediator, or a Settlement Conference before an agreed upon Magistrate Judge.

**13.** **Consent To Magistrate Judge For All Purposes:**

The parties do not consent to assignment to a Magistrate Judge for all purposes.

**14.** **Other References:**

This case is not suitable for reference to binding arbitration, a special master or the Judicial Panel on Multidistrict Litigation.

**15.** **Narrowing of Issues:**

    **a.** **Netlist's Position**

Aside from maintaining separate cases for the patent and trade secret claims, the parties currently do not foresee bifurcating any issues, claims or defenses.  The parties will continue to attempt to narrow issues via stipulated facts, where possible.

Netlist opposes Diablo's requests to continue and delay resolution of the trade secret case. The Court was clear with all parties on April 8, 2014, when it set the discovery and trial schedule,

-11-

1  that there would be no continuances.  Now Diablo seeks to delay the case and prejudice Netlist

2  because of its second change of counsel.

3       With respect to the Trade Secrets, Netlist will serve an expert report in connection with its

4  motion for preliminary injunction that will identify approximately 12 areas of Trade Secrets, with

5  associated subparts, thus further clearly defining the Trade Secrets misappropriated by Diablo.

6  Diablo has no right to seek to limit Netlist's proof of the <u>facts</u> supporting its claim of trade secret

7  misappropriation by limiting the number of Trade Secrets.

8              **b.**     **Diablo's Position**

9       To date, Netlist has not identified which of its alleged trade secrets Diablo allegedly

10  misappropriated.  Diablo has served interrogatories that it believes would not only clarify

11  Netlist's trade secrets allegations but narrow the number of alleged Netlist's trade secrets,

12  currently 61.  As a practical issue, Netlist has simply asserted too many alleged trade secrets for a

13  meaningful case management and, consequently, an orderly trial.  Diablo requested and Netlist

14  expressed a willingness to reduce the number of trade secrets it plans to take to trial.  *See e.g.,*

15  *Brocade Comms. Sys., Inc. v. A10 Networks, Inc.*, 5:10-cv-03428-LHK, Dkt. No. 90 (N.D. Cal.

16  May 9, 2011) (ordering plaintiff to reduce the number of asserted trade secrets and to identify

17  them with particularly on May 31, 2011—nearly a year before the first day of trial on July 16,

18  2012).  Trial on the trade secrets case is set to begin on July 6, 2015.

19       **16.**    **Expedited Trial Procedure:**

20       The parties do not believe this case is appropriate for an expedited trial procedure

21  pursuant to General Order No. 64.

22       **17.**    **Scheduling:**

23       *Schedule for the Trade Secret Case*

24       The Court has adopted the following schedule for the Trade Secret Case which Netlist

25  believes should be retained by the Court intact.  Netlist also opposes Diablo's proposed new dates

26  for "narrowing" Netlist's trade secret claim.

27       Diablo respectfully requests an extension of pretrial deadlines in light of replacement of

28  Diablo's counsel and in view of ongoing discovery for all parties.  Diablo proposes the following

schedule for the Trade Secret Case:

| EVENT | DATES SET BY COURT | DIABLO'S PROPOSED NEW DATES |
|---|---|---|
| Non-Expert Discovery Cut Off | November 28, 2014 | January 30, 2015 |
| Expert Disclosure | December 19, 2014 | February 20, 2015 |
| Rebuttal Expert Disclosure | January 16, 2015 | March 6, 2015 |
| Expert Discovery Cut Off | January 30, 2015 | March 20, 2015 |
| Dispositive Motions to be Heard By | Filed - March 3, 2015; Heard – April 7, 2015 | Filed – April 7, 2015 Heard – May 12, 2015 |
| Joint Pretrial Conference Statement | May 29, 2015 | |
| Pretrial Conference | June 19, 2015 | |
| Trial Date[4] for Trade Secret Case | July 6, 2015 (Jury Trial; 5-7 days) | |

In addition to proposing the revised schedule above, Diablo also requests that the Court

adopt the following schedule for narrowing Netlist's Trade Secrets:

Netlist Narrows Trade Secret Claims to 30 trade secrets:  December 1, 2014

Netlist Narrows Trade Secret Claims to 15 trade secrets:  February 20, 2015

Netlist Narrows Trade Secret Claims to no more than 8 trade secrets:  May 20, 2015

---

[4] The length of trial will depend on the number of trade secrets asserted.  For the 5-7 day trial proposed by Netlist, Diablo believes that no more than 6-8 trade secrets could be presented. More days for trial would be proportionally required for assertion of a greater number of trade secrets.

-13-

1    *Schedule for the Patent Case*

2    Netlist's Position:

3        As to the schedule for the Patent case, Netlist proposes a non-expert discovery cut-off of

4    March 20, 2015, and that the Court schedule another Case Management Conference in early 2015

5    to discuss the remaining deadlines for the Patent case.

6        With regard to Defendant SMART Storage's arguments below, the Patent Case has been

7    pending for over a year.  As this Court noted in denying Defendants' motion to stay the Patent

8    case pending PTO review, "[h]ad Defendants acted expeditiously in seeking review, the court

9    would have received an indication by now as to whether the PTO would institute the review

10   process."  [Dkt. No. 249 at p. 6.]  Because Defendants waited almost a year to file its IPR

11   requests, the Court and the parties will not know whether the PTO will institute any of the

12   requests until December 2014 or January 2015.

13       Netlist's proposal attempts to advance this litigation during this time.  Over the next

14   several months, Netlist intends to seek discovery regarding the structure, function and operation

15   of the accused products, along with damages information relating to the sales of the accused

16   products.  Such discovery is unquestionably relevant to Netlist's claims, and will remain relevant

17   even if some of the claims are "affected" during the PTO's review.  And, while Defendants have

18   previously suggested that the IPR proceeding may affect claim construction, the fact that this

19   Court has taken the claim construction dates off calendar minimizes this impact.

20       Moreover, Defendants' suggestion that the parties have conducted very little discovery in

21   the patent case is incorrect.  Much of the technical discovery relates to both the Patent and Trade

22   Secret Cases.  The fact that discovery has significantly advanced in the Patent Case is best

23   evidenced by Netlist's infringement contentions, which describe Defendants' infringement in

24   great detail.  The fact that SMART Storage has chosen not to pursue discovery related to the

25   Patent Case does not justify a lengthy fact discovery period.

26       In addition, Defendants' bare allegations that they need to depose "seventeen prosecuting

27   attorneys" and "more than 20 potential prior art witnesses" are unfounded.  Indeed, Defendants

28   have failed to provide a basis for seeking discovery from **any** prosecuting attorney, let alone

-14-

1    seventeen.  Likewise, Defendants fail to identify the need to depose 20+ prior art witnesses,

2    particularly given that Defendants shall be estopped from raising prior art references that they

3    raised, or could have raised, in the IPR's.  Defendants' proposal does nothing more than to re-

4    hash the same arguments raised in their motion to stay in hopes of effectively staying this matter

5    until early next year.

6            Defendants' Position:

7            For the schedule in the Patent case, SMART Storage proposes that the Court conduct a

8    Case Management Conference in early 2015 to set dates for all case deadlines, including a cut-off

9    for both fact and expert discovery.  If, however, the Court intends to set a fact discovery cut-off at

10   this time, SMART Storage proposes that such a date be set no earlier than September 2015.

11           Netlist's proposed March 20, 2015 cut-off for fact discovery should be rejected because it

12   does not provide sufficient time to complete discovery in the Patent Case.  As set forth in Section

13   8 above, to date, Netlist and SMART Storage have conducted very little fact discovery of each

14   other, with Netlist instead focusing most of its discovery efforts on its Trade Secret Case against

15   Diablo.  The limited amount of fact discovery that has taken place between Netlist and SMART

16   Storage is hardly surprising because, unlike the Trade Secret Case, dates for fact discovery cut-off

17   and trial have not yet been set in the Patent Case.

18           Although the parties will continue to conduct fact discovery over the next three months, to

19   suddenly require that fact discovery be completed in six months, as Netlist proposes, would be

20   unfair and prejudicial to SMART Storage.  Netlist is alleging infringement of more than 51

21   claims of seven different patents.  Six months does not give SMART Storage a full and fair

22   opportunity to take discovery regarding Netlist's claims and SMART Storage's defenses.  For

23   example, discovery relating to defenses of patent invalidity and unenforceability generally

24   includes depositions of at least the named inventors, prosecuting patent attorneys, and prior art

25   witnesses.  With seven patents being asserted by Netlist, the list of potential deponents in this

26   case includes six named inventors, seventeen prosecuting attorneys, and more than 20 potential

27   prior art witnesses.  To prepare for and take all of these depositions or to conduct the necessary

28   diligence to narrow down this list and then depose a subset of witnesses cannot reasonably be

-15-

1  completed by March 2015 (in addition to the other discovery SMART Storage would need to take

2  and respond to in the Patent Case).

3    Also, a fact discovery cut-off should not be set for March 2015 because no good cause

4  exists to impose such a deadline.  Netlist's proposed cut-off date is completely arbitrary.  Netlist

5  does not propose dates for any other events in the Patent Case, including trial, and simply

6  suggests scheduling a case management conference in early 2015 to address the rest of the

7  schedule.  If Netlist is content to wait until early 2015 before setting dates for trial and other case

8  events, there is no legitimate reason to set a deadline now for the close of fact discovery.  Instead,

9  the parties should address all dates, including fact discovery cut-off, in early 2015.

10    Waiting until early 2015 to schedule a date for fact discovery cut-off also makes sense

11  because it does not force the parties to expend unnecessary resources taking discovery of issues

12  that may be materially affected by the PTO's determination of whether to grant SMART

13  Storage's and Diablo's respective requests for inter partes review (IPR) of the patents-in-suit.  If

14  the PTO grants the IPR requests, which occurs for over 76% of IPR petitions (see

15  http://www.uspto.gov/ip/boards/bpai/stats/091114_aia_stat_graph.pdf; ECF No. 219-14), the

16  PTO's review of the patents-in-suit is likely to affect the validity, scope and/or interpretation of

17  some or all of Netlist's asserted patent claims.  (See id. (reporting that over 80% of IPRs found at

18  least one claim invalid).)  If the fact discovery deadline were arbitrarily set for March 2015, the

19  parties would be required to complete all discovery prematurely without the benefit of the PTO's

20  rulings.  If, however, the Court were to continue under the current discovery schedule (i.e.,

21  without a defined cut-off date) until the PTO's review-grant determination, the parties could defer

22  certain discovery to that time (or later if the PTO granted review and the litigation was stayed).

23  That approach is consistent with the benefits Congress sought to achieve in enacting the AIA,

24  namely "to establish a more efficient and streamlined patent system that will improve patent

25  quality and limit unnecessary and counterproductive litigation costs."  Changes to Implement

26  Inter Partes Review Proceedings, Post-Grant Review Proceedings, and Transitional Program for

27  Covered Business Method Patents, 77 Fed. Reg. 48680-01 (Aug. 12, 2012) (codified at 37 C.F.R.

28  §§ 42.100 et seq.).

18.   **<u>Trial:</u>**

The parties agree that the Trade Secret and Patent Cases will each be tried to a jury. Netlist estimates trial in the Trade Secret Case to last 5 to 7 Court days, and the trial in the Patent Case to last 7 to 10 Court days.

Diablo estimate the trial in Trade Secret Case to last 5-7 Court days if Netlist only asserts 6-8 trade secrets.  More time would be proportionally required depending on the number trade secrets asserted.  Defendants estimate the trial in Patent Case to last at least 10-12 days in view of seven patents-in-suit and multiple parties.

19.   **<u>Disclosure Of Non-party Interested Entities Or Persons:</u>**

Each party has filed its "Certification of Interested Entities or Persons," as required by Civil Local Rule 3-16.

Netlist certifies that no parent corporation or publicly held corporation owns 10% or more of Netlist's stock.

20.   **<u>Professional Conduct:</u>**

The undersigned counsel represents that all counsel of record have reviewed the Guidelines for Professional Conduct for the Northern District of California.

//
//
//
//
//
//
//
//
//
//
//

-17-

21. **Miscellaneous Issues:**

The parties have no additional issues to raise at this time.

Dated:  September 15, 2014

**BARTKO, ZANKEL, BUNZEL & MILLER**
**McANDREWS, HELD & MALLOY**
**DLA PIPER LLP (US)**

By: _____/s/ Benjamin K. Riley_____
                     Benjamin K. Riley

Benjamin K. Riley (CA Bar No. 112007)
briley@bzbm.com
Robert N. Bunzel (CA Bar No. 99395)
rbunzel@bzbm.com
W. Paul Schuck (CA Bar No. 203717)
pschuck@bzbm.com
Sony B. Barari (CA Bar No. 243379)
sbarari@bzbm.com
Simon R. Goodfellow (CA Bar No. 246085)
sgoodfellow@bzbm.com
**BARTKO, ZANKEL, BUNZEL & MILLER**
One Embarcadero Center, Suite 800
San Francisco, California  94111
Telephone:     (415) 956-1900
Facsimile:      (415) 956-1152

Thomas J. Wimbiscus (*Pro Hac Vice*)
twimbiscus@mcandrews-ip.com
Gregory C. Schodde (*Pro Hac Vice*)
gschodde@mcandrews-ip.com
Wayne H. Bradley (*Pro Hac Vice*)
wbradley@mcandrews-ip.com
**McANDREWS, HELD & MALLOY**
500 West Madison Street, 34th Floor
Chicago, IL  60661
Telephone:     (312) 775-8000
Facsimile:      (312) 775-8100

Sean C. Cunningham (CA Bar No. 174931)
sean.cunningham@dlapiper.com
**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA  92101-4297
Telephone:     (619) 699-2700
Facsimile:      (619) 699-2701

Attorneys for Plaintiff
NETLIST, INC.

-18-

1    Dated:  September 15, 2014          **McDERMOTT WILL & EMERY LLP**

2

3                                        By:  _____ */s/ Fabio E. Marino*
                                                    Fabio E. Marino
4
                                         Fabio E. Marino (CA Bar No. 183825)
5                                        fmarino@mwe.com
                                         L. Kieran Kieckhefer (CA Bar No. 241978)
6                                        kkieckhefer@mwe.com
                                         Judith S.H. Hom (CA Bar No. 203482)
7                                        jhom@mwe.com
                                         Nitin Gambhir (CA Bar No. 259906)
8                                        ngambhir@mwe.com
                                         Barrington Dyer (CA Bar No. 264762)
9                                        bdyer@mwe.com
                                         Teri H.P. Nguyen (CA Bar No. 267498)
10                                       **McDERMOTT WILL & EMERY LLP**
                                         275 Middlefield Road, Suite 100
11                                       Menlo Park, CA  94025-4004
                                         Telephone:    (650) 815-7400
12                                       Facsimile:     (650) 815-7401

13                                       Attorneys for Defendant
                                         DIABLO TECHNOLOGIES, INC.
14

15   Dated:  September 15, 2014          **JONES DAY**

16
                                         By:  _____ */s/ Steven J. Corr*
17                                                  Steven J. Corr

18                                       Steven J. Corr (CA Bar No. 216243)
                                         sjcorr@jonesday.com
19                                       JONES DAY
                                         555 South Flower Street
20                                       Los Angeles, CA  90071
                                         Telephone:    (213) 243-2327
21                                       Facsimile:     (213) 243-2539

22                                       Gregory L. Lippetz (CA Bar No. 154228)
                                         glippetz@jonesday.com
23                                       Kathleen D. Lynott (CA Bar No. 268387)
                                         kdlynott@jonesday.com
24                                       JONES DAY
                                         Silicon Valley Office
25                                       1755 Embarcadero Road
                                         Palo Alto, CA  94303
26                                       Telephone:    (650) 739-3939
                                         Facsimile:     (650) 739-3900
27
                                         Attorneys for Defendant
28                                       SMART STORAGE SYSTEMS, INC.
                                                    -19-

UPDATED JOINT CASE MANAGEMENT STATEMENT
                                         CASE NOS. 13-CV-5889 YGR & 13-CV-5962 YGR

1

**ATTESTATION OF E-FILER**

2

        In compliance with Local Rule 5-1(i), the undersigned ECF user whose identification and

3

password are being used to file this document, hereby attests that all signatories have concurred in

4

the filing of this document.

5

6

Dated: September 15, 2014                         _/s/ Benjamin K. Riley_____

7                                                  Benjamin K. Riley

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2458.000/847984.5