# Exhibit A-6

# Exhibit A-6

```
 1  JAMES POOLEY (BAR NO. 58041)
    JPooley@mofo.com
 2  SCOTT OLIVER (BAR NO. 174824)
    SOliver@mofo.com
 3  MORRISON & FOERSTER LLP
    755 Page Mill Road
 4  Palo Alto, California 94304-1018
    Telephone: 650.813.5600
 5  Facsimile: 650.494.0792

 6  Attorneys for Plaintiff
    NETLIST, INC.
 7
```

FILED Santa Clara Co
11/18/08 4:17PM
David H. Yamasaki
Chief Executive Officer
By: Jcaonguyen OTSCIV
R#2008001213B7
CK $320.00
$320.00
Case: 1-08-CV-127991
A. Cao-Nguyen

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SANTA CLARA

| | |
|---|---|
| NETLIST, INC., <br><br> Plaintiff, <br><br> v. <br><br> TEXAS INSTRUMENTS, INCORPORATED, <br><br> Defendant. | Case No. 1 0 8 C V 1 2 7 9 9 1 <br><br> UNLIMITED JURISDICTION <br><br> **COMPLAINT FOR: (1) MISAPPROPRIATION OF TRADE SECRETS AND (2) BREACH OF CONTRACT** |

FILE VIA FAX

## THE PARTIES

1. Netlist, Inc. ("Netlist" or "plaintiff") is a Delaware corporation with its principal place of business in Irvine, California.

2. Texas Instruments, Inc. ("TI" or "defendant") is a Delaware corporation with its principal place of business in Dallas, Texas.

## JURISDICTION AND VENUE

3. This Court has personal jurisdiction over TI because TI regularly transacts business in this state, including at its offices in San Jose and Sunnyvale, has customers and potential customers in this state, and regularly solicits customers in this state.

4. Venue over the alleged claims is proper in this district pursuant to Code of Civil Procedure § 395(a) because TI maintains places of business in Santa Clara County.

1                                                                                    COMPLAINT FOR DAMAGES

## BACKGROUND

5. Netlist specializes in the design and manufacture of computer memory modules. There is a tremendous demand to put as much memory as possible into modern computers—particularly the server computers used in large volumes by companies such as Yahoo, Google, and Microsoft—so as to make the most efficient use of each server.

6. To meet this demand, the design of high-performance memory modules that can be plugged into these computers has become critically important. The competing demands of price, size, energy consumption, and reliability demand innovative solutions.

7. Netlist has invested years of effort and millions of dollars in developing such solutions, and through its investment has discovered and developed a body of information regarding the design and manufacture of memory modules. This information includes the results of research which show not only what works, but what does not work, and what works less well. One of Netlist's key innovations enables standard-size memory modules to operate at lower power, higher speeds and offer higher memory densities at significantly lower cost through the use of novel integrated circuit ("IC") to control the movement of electrical signals on that module. The design of and requirements for this and other memory modules are referred to hereinafter as the "Netlist Trade Secrets."

8. Because Netlist is not in the business of designing and fabricating integrated circuits, it contacted TI to discuss TI's development of a proprietary IC for Netlist. The parties entered into a non-disclosure agreement ("NDA") on October 24, 2006, under which TI agreed to protect Netlist's confidential information and to use it only for evaluation of possible co-development of products to be sold by TI solely to Netlist. A true and correct copy of that agreement is attached hereto as Exhibit A.

9. From October 2006 through April 2007, the parties held extensive discussions about TI's development of a custom IC for Netlist. Because of the nature of the project, Netlist revealed to TI many of the Netlist Trade Secrets.

10. In April 2007, TI told Netlist that it did not believe the proposed memory module was viable, and the parties' discussions ceased. In June 2007, TI expressed renewed interest in the

concept and contacted Netlist to continue the discussions. Through the balance of 2007 and early 2008, TI and Netlist held further detailed meetings about the Netlist Trade Secrets, and TI visited Netlist's facilities to discuss the requirements for the custom IC.

11. In February 2008, TI abruptly terminated the discussions, informing Netlist that it (again) did not believe the IC was feasible.

12. On October 15, 2008, TI presented to a computer memory industry standards group known as "JEDEC" detailed descriptions of what purported to be TI's own concepts for a next-generation memory module. Those descriptions bear a striking similarity to Netlist's confidential disclosures to TI, and include substantial portions of the Netlist Trade Secrets.

13. The Netlist Trade Secrets are not generally known, and are maintained in confidence by the Netlist employees who have access to them and others who need to know them but who are entrusted with them according to express and implied agreements. Netlist has at all times taken reasonable steps to protect such confidential information from being stolen and misused. This information would be of great value if it became known to Netlist's competitors.

## FIRST CAUSE OF ACTION

### (Misappropriation of Trade Secrets)

14. Netlist incorporates by reference all the allegations contained in paragraphs 1 through 13 above.

15. Netlist incorporates by reference all preceding paragraphs.

16. On information and belief, TI has misappropriated the trade secrets of Netlist by disclosing that information to members of the JEDEC association and others, and by using it or offering to use it for the benefit of TI.

17. On information and belief, defendant has acted with knowledge that the information was Netlist's trade secrets and that it was not authorized to disclose or use them; defendant has therefore acted willfully and maliciously.

18. Unless restrained by this Court, defendant's acts of misappropriation will continue, causing great and irreparable injury to Netlist.

19. As a result of this misappropriation of Netlist's trade secrets, Netlist has been harmed

3  COMPLAINT FOR DAMAGES

and/or defendant has benefited in an amount which is not now known to Netlist but which exceeds the jurisdictional minimum of this Court.

## SECOND CAUSE OF ACTION

### (Breach of Contract)

20. Netlist incorporates by reference all the allegations contained in paragraphs 1 through 19 above.

21. The parties' non-disclosure agreement is an enforceable contract between the parties. Netlist has performed all conditions, covenants and promises required on its behalf to be performed in accordance with the terms and conditions of the NDA.

22. TI has breached the NDA by disclosing Netlist Trade Secrets to third parties and, on information and belief, by using such information provided by Netlist for the purpose of developing TI's own business interests.

23. As a result of TI's breaches of its agreement with Netlist, Netlist has suffered damages in an amount to be proven at trial. In addition, Netlist has suffered and will suffer harm that cannot be remedied in damages, and that will require equitable relief.

## PRAYER

WHEREFORE, plaintiff Netlist prays for relief as follows:

1. For a temporary, preliminary and permanent injunction against TI, and its agents, servants, employees and all persons acting with it:

   a. prohibiting use or disclosure of any Netlist Trade Secrets;

   b. prohibiting developing, marketing or offering for sale any products or services manufactured or derived from any part of the Netlist Trade Secrets; and

   c. requiring return forthwith to Netlist any materials which contain or describe any part of the Netlist Trade Secrets.

2. For the imposition of a constructive trust on the fruits of defendant's misappropriation, including rights to patents and patent applications and any other ill-gotten gains.

3. For an award of actual, incidental and consequential damages, together with interest, in an amount to be proven at trial.

4. Recovery of amounts by which TI was unjustly enriched.

5. For an award of increased damages, including as provided by California Civil Code section 3426.3.

6. For reasonable attorneys' fees as allowed by law.

7. For costs of suit herein.

8. For such other and further relief as the Court may deem just and proper.

Dated: November 18, 2008

JAMES POOLEY
SCOTT OLIVER
MORRISON & FOERSTER LLP

By: /s/ James Pooley
JAMES POOLEY
Attorneys for Plaintiff
NETLIST, INC.

pa-1296755