FABIO E. MARINO (SBN 183825)
fmarino@mwe.com
L. KIERAN KIECKHEFER (SBN 251978)
kkieckhefer@mwe.com
JUDITH S.H. HOM (SBN 203482)
jhom@mwe.com
NITIN GAMBHIR (SBN 259906)
ngambhir@mwe.com
BARRINGTON DYER (SBN 264762)
bdyer@mwe.com
TERI H.P. NGUYEN (SBN 267498)
thpnguyen@mwe.com
NATALIE BENNETT (*Pro Hac Vice*)
nbennett@mwe.com
McDERMOTT WILL & EMERY LLP
275 Middlefield Road, Suite 100
Menlo Park, CA  94025-4004
Telephone:    650 815 7400
Facsimile:     650 815 7401

Attorneys for Defendant and Counterclaim-Plaintiff
DIABLO TECHNOLOGIES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| NETLIST, INC., a Delaware corporation,<br><br>Plaintiff and Counterclaim-Defendant,<br><br>vs.<br><br>DIABLO TECHNOLOGIES, INC., a Canadian corporation,<br><br>Defendant and Counterclaim-Plaintiff. | CASE NO.  4:13-cv-05962 YGR<br>(Related Case No. 4:13-cv-05889 YGR)<br><br>**DIABLO'S OBJECTIONS TO EVIDENCE FILED IN SUPPORT OF NETLIST'S REPLY BRIEF AND NEW ARGUMENTS RAISED THEREIN**<br><br>Judge:    Hon. Yvonne Gonzalez-Rogers |

Defendant and Counterclaim-Plaintiff Diablo Technologies, Inc. ("Diablo") objects to new arguments raised for the first time in Netlist's reply in support of the Motion for a Preliminary Injunction (Dkt. No. 230) ("Reply"), as well as the attached "supplemental" expert report, declarations, and exhibits submitted by Plaintiff Netlist, Inc. ("Netlist") (Dkt. Nos. 230-1 through 230-19). Throughout these materials, Netlist produced entirely new matter that contradicts its opening papers and the positions it had taken before Diablo served its opposition brief. The law on this issue is plain: courts do not consider new matter introduced in a reply. *Coos County v. Kempthorne*, 531 F.3d 792, 812 n.16 (9th Cir. 2008) (declining to consider an argument raised for the first time in a reply brief); *Grimes v. Barber*, No. 09-cv-411, 2009 WL 5062348, at *5 (N.D. Cal. Dec. 23, 2009) ("A party may not raise new matter in a Reply brief."); *see also Dioquino v. Sempreis, LLC*, No. 11-cv-5556, 2012 WL 6742528, at *3 (C.D. Cal. Apr. 9, 2012) (refusing to address new matter that is improperly introduced). Because the arguments and purported evidence set forth below is not the proper subject matter for a reply, Diablo lodges its objections and respectfully requests that the Court not consider any position/evidence not advanced in the opening Motion for a Preliminary Injunction.

### A. Netlist Submits New Materials in Reply Because It Has Not Carried its Burden on the Four Factors for Injunctive Relief

Because a preliminary injunction is an extraordinary remedy, it is never awarded as a matter of right. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689-690 (2008)). Netlist was required, in its opening motion (Dkt. No. 190), to satisfy its burden in demonstrating (1) likelihood of success on the merits, (2) irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that an injunction is in the public interest. *Winter*, 555 U.S. at 20. Diablo's opposition brief (Dkt. No. 228) rebutted Netlist's showing, presenting several grounds, each providing independent reasons why the request for an injunction should be denied. Apparently recognizing the weakness of its opening arguments, Netlist used the reply brief and corresponding materials to interject entirely new theories in an effort to remedy those deficiencies. This approach, however, is at odds with the well-settled rule that the moving party must marshal the necessary evidence to

satisfy its burden of proof in the opening brief.  *See Nalco Co. v. Turner Designs, Inc*., No. 13-cv-2727, at *10 (N.D. Cal. Oct. 17, 2014) (rejecting arguments and supporting declarations raised for the first time in reply to support a new theory); *Langston v. North American Asset Development Corporation*, No. 08-cv-2560, at *5 n.7 (N.D. Cal. Apr. 6, 2009).  Indeed, while the reply brief is an opportunity to respond to the opposition, it is not a *carte blanche* mechanism to altogether set a new course or remedy legal deficiencies in the opening papers.  *E.g., Roth v. BASF Corp*., No. 07-cv-106, 2008 WL 2148803, at *2-3 (W.D. Wash. May 21, 2008) (discussing proper and improper reply briefing).  Here, allowing Netlist to supplement its evidence at this late stage, when Diablo has not had an opportunity to respond, would substantially and unfairly prejudice Diablo.

### B. The "Supplemental" Submissions of Netlist's Witnesses Underscore the Plaintiff's Improper Effort to Switch Gears and Fill in Evidentiary Holes in Reply

As listed below, Diablo points out representative instances where Netlist improperly relies on extensive "supplemental" statements from its Chief Executive Officer, Chief Technology Officer, and expert witness, to stretch the bounds of acceptable motion practice:

- **The "Supplemental" Declaration of Chuck Hong** (Dkt. No. 230-8) submits a spectrum of statements that could have been brought in the declaration attached to Netlist's opening brief.  For example, in the "supplemental" declaration:

    - Mr. Hong defines his understanding of when products are competitive, including a specific discussion of the ULLtraDIMM and NVvault.  *See* Hong Supp. Decl. ¶¶ 2-4.  He belatedly proffers this evidence in support of Netlist's new theory that competition would not be based on fundamental differences in a product's functionality and capability, such as the difference between a flash storage solution and a DRAM based memory solution.  *See* Reply (Dkt. No. 230) at 10-11.

    - Mr. Hong discusses, for the first time, Netlist's marketing materials in support of Netlist's new theory that any entity who sells to customers involved in the vague spheres of "big data analytics, high speed transaction processing, high

- performance database servers, data protection, and virtualization" are competitors. Hong Supp. Decl. ¶¶ 6-13; *see* Reply at 9-11.
- Mr. Hong draws conclusions in support of the aforementioned new competition theories based on technical terms never previously introduced or otherwise discussed, such as "high speed transaction processing" and "online transaction processing." *See* Hong Supp. Decl. ¶ 9.
- Mr. Hong characterizes publicly available materials featuring Diablo's CEO that were available at the time of the filing of the declaration attached to Netlist's opening motion.[1] Hong Supp. Decl. ¶¶ 14-21. He proffers these statements now in support of Netlist's new theories regarding website acceleration—a concept never once raised in the opening motion.

- There is no reason Mr. Hong could not have made his position clear in the earlier declaration when Diablo would have had an opportunity to respond. Moreover, Mr. Hong is not qualified as an expert and his improper lay opinion should not be admitted under Rule 702 of the Federal Rules of Evidence. Diablo objects to consideration of Mr. Hong's statements of "specialized knowledge" as if he were an expert. *See Laser Design Int'l, LLC v. BJ Crystal, Inc*., No. 03-cv-1179, 2007 WL 735763, at *2 (N.D. Cal. Mar. 7, 2007). For example, in proffering statements in support of the new theories, Mr. Hong criticizes Diablo's expert, *passim*, and relies on his "25 years of experience in the high-performance memory market." Hong Supp. Decl. ¶ 4. Mr. Hong has crossed into the realm of expert opinion, which independently warrants exclusion of his supplemental statements.

---

[1] Mr. Hong repeatedly swears under oath to statements for which he has no personal knowledge, including (but not limited to) Mr. Badalone's intent, Mr. Malackowski's methodology, and the marketing strategies of third parties such as AgigA Tech and Smart Modular. The Court should not credit statements outside the scope of what Mr. Hong would know through his role as Netlist's CEO. *See* Fed. R. Evid. 602; *Boyd v. City of Oakland*, 458 F. Supp. 2d 1015, 1031 (N.D. Cal. 2006) ("Under FRE 602, a witness must have personal knowledge of the subject matter attested to. . . [the declarant] was admittedly not present at the alleged event and therefore has no personal knowledge [].").

DIABLO'S OBJECTIONS TO NETLIST REPLY EVIDENCE
CASE NO. 4:13-CV-05962 YGR

- **The "Supplemental" Declaration of Hyun Lee** (Dkt. No. 230-19) submits facts regarding, *inter alia*, the LRD/DXD Specifications, the public disclosure of pertinent technologies by third parties, and the preparation of Netlist's Amended Trade Secret Disclosure that could have and should have been brought in the declaration attached to Netlist's opening motion. Netlist bears the burden of establishing all elements of trade secret misappropriation, including that it owned a trade secret that was not already in the public domain. Because it did not originally makes this showing, Netlist now aims to fill in the evidentiary gaps with new theories regarding what Dr. Lee shared with Diablo and what his involvement was in preparing the Amended Trade Secret Disclosure.[2] *See* Reply at 7-8. This evidence should not be considered.

- **The "Supplemental" Jansen Report** (Dkt. No. 230-6) is used as a vehicle to attempt to remedy legal deficiencies with Netlist's Trade Secret Disclosures. In its opposition, Diablo pointed to Netlist's failure under a well-established line of California decisions to state with specificity what trade secrets are embodied in the LRD/DXD Specifications. Netlist remains unable to make this showing, but in reply, again turns to its expert in hopes of transforming generic terms into intellectual property worthy of legal protection. Yet, merely adding additional layers of abstraction does not cure Netlist's fundamental deficiencies. *See* Supp. Jansen Report at 1-4; Reply at 6-8.

- As dictated by the cases in this District, Mr. Jansen's "supplemental" efforts to attack Mr. McAlexander are also improper in reply. *E.g., Nalco Co. v. Turner Designs, Inc.*, No. 13-cv-2727, at *10 (N.D. Cal. Oct. 17, 2014). Netlist had its opening opportunity to prove likelihood of success. That the opportunity was not met with fulsome treatment of the issues does not open the door to a second round of expert reports. The "supplemental" report is unrelated to the initial set of opinions and articulates new positions to which Diablo has had no opportunity to respond. This strategy unduly prejudices Diablo as the non-moving party.

---

[2] Netlist's effort again fails. When the evidence is fully and objectively considered, Mr. Lee's "supplemental" declaration statements are contradicted by his own deposition testimony, as well as that of the Diablo witnesses.

- 4 -

DIABLO'S OBJECTIONS TO NETLIST
REPLY EVIDENCE
CASE NO. 4:13-CV-05962 YGR

\*     \*     \*

The foregoing objections to new arguments and evidence contained in Netlist's Reply are made insofar as the evidence is offered in support of Netlist's Motion for a Preliminary Injunction. To the extent the Court does not consider the new arguments and the declarations, expert report, and exhibits corresponding thereto, Diablo will withdraw the objections. Diablo may lodge additional objections to any of the statements made in the "supplemental" witness declarations or the "supplemental" expert report during the course of an evidentiary hearing or other proceedings. Diablo further does not waive evidentiary objections to the admission of specific exhibits if they are used with a witness during the course of live testimony.

As set forth above, the documents or portions of the documents described herein should be excluded from the evidence considered in support of Netlist's Motion for a Preliminary Injunction.

Dated: November 18, 2014

Respectfully submitted,

McDERMOTT WILL & EMERY LLP

By: */s/ Natalie Bennett*
      Natalie Bennett

Attorneys for Defendant and Counterclaim-Plaintiff DIABLO TECHNOLOGIES, INC.

DM_US 56789242-2.095339.0011