| | |
|---|---|
| Benjamin K. Riley (CA Bar No. 112007)<br>briley@bzbm.com<br>Robert H. Bunzel (CA Bar No. 99395)<br>rbunzel@bzbm.com<br>C. Griffith Towle (CA Bar No. 146401)<br>gtowle@bzbm.com<br>W. Paul Schuck (CA Bar No. 203717)<br>pschuck@bzbm.com<br>Sony B. Barari (CA Bar No. 243379)<br>sbarari@bzbm.com<br>Simon R. Goodfellow (CA Bar No. 246085)<br>sgoodfellow@bzbm.com<br>Sean R. McTigue (CA Bar No. 286839)<br>smctigue@bzbm.com<br>**BARTKO, ZANKEL, BUNZEL & MILLER**<br>One Embarcadero Center, Suite 800<br>San Francisco, California 94111<br>Telephone: (415) 956-1900<br>Facsimile: (415) 956-1152 | Gregory C. Schodde (*Pro Hac Vice*)<br>gschodde@mcandrews-ip.com<br>Wayne H. Bradley (*Pro Hac Vice*)<br>wbradley@mcandrews-ip.com<br>**McANDREWS, HELD & MALLOY**<br>500 West Madison Street, 34th Floor<br>Chicago, IL 60661<br>Telephone: (312) 775-8000<br>Facsimile: (312) 775-8100<br><br>Sean C. Cunningham (CA Bar No. 174931)<br>sean.cunningham@dlapiper.com<br>**DLA PIPER LLP (US)**<br>401 B Street, Suite 1700<br>San Diego, CA 92101-4297<br>Telephone: (619) 699-2700<br>Facsimile: (619) 699-2701 |

Attorneys for Plaintiff NETLIST, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| NETLIST, INC.,<br><br>    Plaintiff,<br><br>vs.<br><br>DIABLO TECHNOLOGIES, INC.,<br><br>    Defendant. | Case No. 4:13-cv-05962 YGR<br>(Related Case No. 4:13-cv-05889 YGR)<br><br>**NETLIST'S RESPONDING BRIEF RE PRETRIAL ORDER NO. 2**<br><br><br>Courtroom 1, 4th Floor<br>The Honorable Yvonne Gonzalez Rogers<br><br>Trial Date: March 9, 2015 |

Pursuant to the Court's Pretrial Order No. 2, Netlist hereby submits its responding brief concerning the burden of proof for exemplary damages and Diablo's arguments regarding contract interpretation and proof of Netlist's harm:

## I. BURDEN OF PROOF FOR EXEMPLARY DAMAGES FOR TRADE SECRET MISAPPROPRIATION: PREPONDERANCE OF THE EVIDENCE.

The appropriate burden of proof for exemplary damages for trade secret misappropriation is a preponderance of the evidence, not clear and convincing evidence as argued by Diablo.

First of all, the applicable trade secret statute, Civil Code section 3426.3(c) (enacted in 1984), does not specify any different standard for proof of exemplary damages than the normal preponderance of evidence standard applicable to the rest of the UTSA statute. *See* § 3426.3(c): "If willful and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice any award made under subdivision (a) or (b)." *See also* Evid. Code § 115: "Except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence." By contrast, the longstanding general California punitive damages statute, Civil Code section 3294(a) (enacted in 1872), expressly requires clear and convincing evidence. *See* § 3294(a): "In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to actual damages, may recover damages for the sake of example and by way of punishing the defendant." (Emphasis added.)

The California Supreme Court held just last year that where the Legislature includes language in one statute but not in a different statute on a similar subject, this is "evidence of a different legislative intent." *People v. Arriaga*, 58 Cal.4th 950, 960 (2014) (emphasis added). The Court observed: "It is a settled principle of statutory interpretation that if a statute contains a provision regarding one subject, that provision's omission in the same or another statute regarding a related subject is evidence of a different legislative intent." *Id.*

Similarly, in *Tyrone W. v. Superior Court*, 151 Cal.App.4th 839, 850 (2007), the court held:

-1-

> We presume the Legislature intended everything in a statutory scheme, and we do not read statutes to omit express language <u>or to include omitted language</u>. When a statute on a particular subject omits a particular provision, the inclusion of such a provision in another statute <u>concerning a related matter</u> indicates an intent that the provision is not applicable to the statute from which it was omitted. (Emphasis added.)

And in *Settle v. State*, 228 Cal.App.4th 215, 217, 220 (2014), the court found:

> This court is loath to construe a statute which has the effect of adding language. We are compelled to add language only in extreme cases where, as a matter of law, we are convinced that the Legislature, through inadvertence, failed to utilize the word or words which give purpose to its pronouncements. [. . .] This is not such an extreme case and we decline to add attorney liability to section 1038. (Quotation marks and citation omitted.)

Here, since the trade secret statute is silent, and the pre-existing general California punitive damages statute requires clear and convincing evidence, this Court should presume the Legislature intended not to require the heightened quantum of proof. Indeed, the Ninth Circuit held — in a similar case involving Montana's equivalent UTSA statutes — that importing Montana's heightened standard from its punitive damages statute into its trade secret statute, which was silent on the standard, was "<u>legal error</u>." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1111 (9th Cir. 2001) (emphasis added).

Additionally, there is no California case expressly stating that the standard for proving exemplary damages for trade secret misappropriation is anything other than the normal preponderance of the evidence. *See* CACI No. 4411 "Directions for Use:" "No reported California state court case has addressed whether . . . the finding must be made by clear and convincing evidence rather than a preponderance of the evidence." CACI No. 4411 cites — and Diablo will likely rely on — *Ajaxo Inc. v. E*Trade Group Inc.*, 135 Cal.App.4th 21, 66 (2005), in which the court affirmed a jury's finding by clear and convincing evidence that the defendant's misappropriation was willful and malicious. But the *Ajaxo* court did not opine on whether clear and convincing evidence was the correct standard. CACI No. 4411 also cites *Vacco Industries, Inc. v. Van Den Berg*, 5 Cal.App.4th 34, 54 (1992), in which the jury found clear and convincing evidence of malice. Like in *Ajaxo*, however, the court did not opine on the correct standard.

In contrast, in *Yeti by Molly*, the Ninth Circuit directly found that where Montana's trade secret statute was silent as to the standard of proof required for punitive damages, clear and

-2-

NETLIST'S RESPONDING BRIEF RE PRETRIAL ORDER NO. 2
Case No. 4:13-cv-05962 YGR

1 convincing evidence was not required. 259 F.3d at 1112.

2 Where no heightened proof standard is specified by the statute, the law is settled that a

3 court should presume the Legislature intentionally omitted that language. This Court should

4 follow the Ninth Circuit in the *Yeti by Molly* case and find that the standard of proof for exemplary

5 damages for trade secret misappropriation is a preponderance of the evidence.

## II. DIABLO MIL NO. 2, CONTRACT INTERPRETATION: THE NETLIST EMAILS AND HONG INDUSTRY PRACTICE TESTIMONY ARE ADMISSIBLE.

*Exhibits 66, 69, 78, 79, 82 and 84 are Admissible.*

Diablo seeks to exclude six emails, claiming they "involve[] a dispute regarding the interpretation of the contract." Diablo misapprehends both the nature of the "dispute" that arose shortly after the parties entered into the Supply Agreement and the substance of the emails it seeks to exclude. In September 2008, less than one week after signing the Supply Agreement, Diablo filed a patent application with the U.S. PTO. This patent application included technical information and ideas arising from the HyperCloud® project for Netlist, but did not identify Netlist's Dr. Hyun Lee as an inventor.[1] It is this "patent activity" on the part of Diablo that was the subject of the parties' dispute. In 2008 and 2009, there was no dispute regarding the scope or interpretation of the parties' rights under Section 2, 3, 7 and 8 of the just-signed Supply Agreement; Diablo's trade secret theft did not even start until late 2010.[2]

In fact, Diablo understood its rights to use Netlist's IP were limited under the Supply Agreement and sought to renegotiate and expand them. Diablo's efforts to amend the Supply Agreement are the primary subject of the challenged emails and support Netlist's interpretation of Diablo's limited IP rights. For example, the January 18, 2009 email from Cedric Paillard (Diablo's VP of Business Development) to Ricardo Badalone (Diablo's President) refers to a "proposal" to be made to Netlist. (*See* Ex. 78.) The "proposal" to "modify the agreement" was set

---

[1] This and related applications ultimately issued as U.S. Patent No. 8,452,917 ('917 Patent). The '917 Patent's failure to list Dr. Hyun Lee as an inventor is the subject of Netlist's first cause of action for correction of patent inventorship/ownership.

[2] Netlist did not suspect that Diablo was using its trade secrets until 2013, with the public announcement of Diablo's partnership with SanDisk on the ULLtraDIMM module.

forth in a January 20 email from Mr. Paillard to Jim Perrot at Netlist, to which Mr. Perrot responded on January 23. (*See* Ex. 79.) Exhibits 82 and 84 confirm that while the "dispute" relates to Diablo's patent activities, Diablo's goal was to renegotiate the Supply Agreement to expand its contractual rights. (*See, e.g.*, Ex. 84: "Netlist does not wish to make any further changes . . . Continued negotiations on desired changes to this agreement is creating gaps of credibility and sapping energy from all parties involved.")

Diablo's post-contract efforts to expand its rights is consistent with Netlist's interpretation of the Supply Agreement and is compelling evidence that Diablo's purported understanding regarding its rights to use Netlist's IP is an after-the-fact justification of its breaches of the agreement. These emails are admissible.

Additionally, the emails are admissible for two other reasons. First, Exhibits 66, 69, 78, 79 and 84 are "opposing party's statements" pursuant to Federal Rule of Evidence 801(d)(2). Second, the emails establish that Diablo willfully and maliciously misappropriated Netlist's Trade Secrets because it knew its rights to use Netlist's IP were limited. Cal. Civ. Code § 3426.3(c).

*Hong Testimony Re Technical Terms, Custom and Practice.*

Diablo also seeks to exclude testimony from Netlist's President, Chuck Hong, regarding the scope of the Supply Agreement on the ground that "evidence of custom and usage cannot be used to interpret a term that has already been negotiated by the parties." As support for this proposition, Diablo cites to *Varni Bros. Corp. v. Wine World, Inc.*, 35 Cal.App.4th 880, 889-90 (1995). Neither *Varni*, nor the case that it relies on (*Reely v. Chapman*, 177 Cal.App.2d 260, 263 (1960)), stands for this absolute principal. Both *Varni* and *Reely* involved oral contracts where the parties disputed the duration of the agreement due to absent terms. This is very different from the circumstances here, where the parties dispute the meaning of several provisions within a written agreement. Courts routinely admit custom and usage evidence to assist the trier of fact in understanding a contract provision that was the subject of negotiations. *See Midwest Television, Inc. v. Scott, Lancaster, Mills & Atha, Inc.*, 205 Cal.App.3d 442, 451 (1988) ("The industry practice becomes a part of the contract, and the evidence of such custom is admissible to supply a missing term or to aid in interpretation if it does not alter or vary the terms of the contract.")

(emphasis added).

Diablo also claims that custom and usage is generally not admissible to assist in interpreting a contract provision. This too is incorrect. There are numerous cases where courts look to industry usage to aid in interpretation of entire provisions (not just words). *See, e.g., Garter v. Metzdorf Associates*, 217 Cal.App.2d 812, 819 (1963) (analyzing paragraph in negotiated lease in light of hotel industry standards); *Hollywood Foreign Press Ass'n v. Red Zone Capital Partners II*, 870 F.Supp.2d 881, 923 (C.D. Cal. 2012) (considering evidence of entertainment industry custom regarding use and meaning of "extensions clause").

Moreover, pursuant to the Court's admonition, Netlist identified both Mr. Hong and Dr. Lee as "internal experts" on September 24. (*See* Exhibit A, attached.) Then in his October 3 Declaration, Mr. Hong opined about the "standard practice in the industry" concerning the rights under the Supply Agreement, particularly Diablo's limited Implementation rights. (Dkt. 192, ¶ 33; *see also* Dkt. 230-8 (November 11 Supplemental Declaration), ¶ 38.] Accordingly, Mr. Hong may properly testify concerning these understandings.

### III. DIABLO MIL NO. 3: EVIDENCE OF NETLIST'S HARM IS ADMISSIBLE BEFORE THE JURY.

Diablo's supplemental argument regarding its Motion in Limine No. 3 fails to address, let alone cure, the significant defects of its initial motion. First, despite the Court's explicit instructions, Diablo has failed to set forth specific exhibits or testimony that it contends should be excluded from evidence. Instead, Diablo sets forth general categories of "subject matter." This failing alone requires denial of the motion.

Second, Diablo's argument fails to acknowledge the critical distinction between evidence that Netlist intends to offer for its substantive underlying case versus that which it might offer to establish damages. Diablo's reasoning is singularly based on the assumption that Netlist is not seeking damages based on actual losses — including lost opportunities or reasonable royalties — and that evidence of harm is therefore supposedly unnecessary to establish damages under an unjust enrichment theory. Diablo's argument misses the point; it fails to address or rebut the fact that, damages aside, evidence of harm is critically important and relevant to Netlist's substantive

-5-

2458.000/880914.2                         NETLIST'S RESPONDING BRIEF RE PRETRIAL ORDER NO. 2
Case No. 4:13-cv-05962 YGR

causes of action.

The law is unambiguous: harm is an element of both Netlist's breach of contract and trade secret misappropriation causes of action. CACI No. 303; CACI No. 4401. Netlist must introduce such evidence of harm to establish its case on the merits. Furthermore, and as set forth more fully in its initial Opposition to Diablo's MIL No. 3, Netlist must introduce evidence of harm in order to fully establish the independent economic value of its Trade Secrets — as required by the California Uniform Trade Secrets Act. Cal. Civ. Code § 3426.1(d). By either avenue, evidence of the competitive harm that Netlist suffered as a direct consequence of Diablo's actions is essential to Netlist's underlying causes of action.

For instance, Diablo's actions caused the following harm to Netlist:

- The development and market entry of Netlist's nascent HyperVault and NVvault® products — both targeted for production in 2015 — have been severely hampered by Diablo's actions. Indeed, HyperVault and NVvault® were essentially stopped from entering the marketplace and gaining a foothold by Diablo's introduction of the directly-competing ULLtraDIMM, which usurped market opportunities and created extensive confusion over ownership of the underlying technologies. (Declaration of Chuck Hong ("Hong Decl."), Dkt. 192 at ¶¶69-86); (Supplemental Declaration of Hong ("Supp. Hong Decl."), Dkt. 230-8 at ¶¶31-32).

- As a result, Diablo's own product — ULLtraDIMM — was able to leapfrog into the market via early qualification lock-ins with at least IBM, Supermicro, and Huawei. (Hong Decl., at ¶85). Despite Netlist's longstanding business relationship supplying memory products to IBM, IBM decided to forego Netlist's NVvault® and instead chose to partner with Diablo on ULLtraDIMM. (Id., at ¶¶77-79).

- Toshiba and Samsung — potential game-changing computer partners for Netlist — terminated ongoing meetings due to confusion and suspicion arising directly from Diablo's misappropriation of Netlist's Trade Secrets and their incorporation into ULLtraDIMM, and Diablo's statements regarding its alleged ownership of these technologies. (*Id.*, at 80-83); (Supp. Hong. Decl., ¶32-34.)

These are not empty facts intended simply to calculate damages. They are important pieces

-6-

1 of Netlist's overall case. They also are indispensable for a fact-finder attempting to properly
2 understand this action. To withhold these important facts from the jury would prevent the jury
3 from fully understanding the broader context of the case and in short, why Netlist has brought this
4 suit against Diablo at all. Without such evidence of harm, the jury will be left confused as to the
5 actual wrongs at the heart of Netlist's case. Just as evidence that may be confusing or misleading
6 should be excluded, so relevant evidence that counters confusion and facilitates the jury's
7 understanding of the case should be permitted. Fed. R. Evid. 403.

In sum, the relevant, non-prejudicial evidence of Netlist's harm is essential for the jury to evaluate the merits and equities of the case. To the extent Diablo's motion is indeed limited to damages-related arguments, Netlist is willing to forego any argument or reference that such harm is "irreparable" or to the Court's previous findings in that regard or any other limitation the Court deems necessary. But because of Netlist's crucial need to present evidence of harm to the jury for its underlying causes of action, the value of its Trade Secrets, and to help the jury understand the nature of Netlist's injury, Diablo's Motion in Limine No. 3 should be denied.

DATED: February 23, 2015

**BARTKO, ZANKEL, BUNZEL & MILLER**
**McANDREWS, HELD & MALLOY**
**DLA PIPER LLP (US)**

By: */s/ Benjamin K. Riley*
Benjamin K. Riley

Attorneys for Plaintiff NETLIST, INC.