FABIO E. MARINO (SBN 183825)
fmarino@mwe.com
L. KIERAN KIECKHEFER (SBN 251978)
kkieckhefer@mwe.com
NITIN GAMBHIR (SBN 259906)
ngambhir@mwe.com
BARRINGTON DYER (SBN 264762)
bdyer@mwe.com
TERI H.P. NGUYEN (SBN 267498)
thpnguyen@mwe.com
NATALIE BENNETT (*Admitted Pro Hac Vice*)
nbennett@mwe.com
McDERMOTT WILL & EMERY LLP
275 Middlefield Road, Suite 100
Menlo Park, CA 94025-4004
Telephone: 650 815 7400
Facsimile: 650 815 7401

RUSSELL HAYMAN (SBN 110643)
rhayman@mwe.com
JON DEAN (SBN 184972)
jdean@mwe.com
McDERMOTT WILL & EMERY LLP
2049 Century Park East, 38th Floor
Los Angeles, CA 90067
Telephone: 310-277-4110
Facsimile: 310-277-4730

Attorneys for Defendant
DIABLO TECHNOLOGIES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| NETLIST, INC., a Delaware corporation,<br><br>    Plaintiff,<br><br>    vs.<br><br>DIABLO TECHNOLOGIES, INC., a Canadian corporation,<br><br>    Defendant. | CASE NO. 4:13-cv-05962 YGR<br>(Related Case No. 4:13-cv-05889 YGR)<br><br>**DIABLO TECHNOLOGIES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISSOLVE THE JANUARY 12, 2015 PRELIMINARY INJUNCTION**<br><br>Date: April 10, 2015<br>Time: 3:00 p.m.<br>Ctrm: 1, 4th Floor<br>Judge: Hon. Yvonne Gonzalez Rogers |

| | |
|---|---|
| 1 | **NOTICE OF MOTION** |
| 2 | **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:** |

**PLEASE TAKE NOTICE** that Defendant Diablo Technologies, Inc. ("Diablo") hereby moves the Court to dissolve its January 12, 2015 Order Granting a preliminary injunction (Dkt. No. 277) as well as the related Order envisioning the same relief (Dkt. No. 251). This motion is based on this notice of motion, the accompanying memorandum and points of authorities, and any oral argument presented before this motion is taken under submission by the Court.

Dated: March 30, 2015

Respectfully submitted,

McDERMOTT WILL & EMERY LLP

By: */s/ Fabio E. Marino*
Fabio E. Marino

Attorneys for Defendant
DIABLO TECHNOLOGIES, INC.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendant Diablo Technologies, Inc. ("Diablo") respectfully submits this memorandum in support of its motion that the Court dissolve the preliminary injunction entered on January 12, 2015.  *See* (Dkt. No. 277) ("Prelim. Inj. Order").

## I.   INTRODUCTION

The preliminary injunction was predicated on a finding that Netlist was likely to succeed on its contract claims.  The case has now been tried to a jury.  The jury found that Diablo is not liable for breach of contract.  Thus the equities have shifted and do not permit the injunction to remain in place.  Netlist is now *highly unlikely* to prevail on its contract claims.

The Supreme Court recently cautioned:  "Because injunctive relief is drafted in light of what the court believes will be the future course of events, . . . a court must never ignore significant changes in the . . . circumstances underlying an injunction lest the decree be turned into an instrument of wrong."  *Salazar v. Buono*, 130 S. Ct. 1803, 1816 (2010) (internal quotation marks omitted).  To even temporarily ignore the jury's verdict would be to allow the preliminary injunction to continue to function as an "instrument of wrong."  *Id.*  The preliminary injunction must be dissolved.

## II.   PROCEDURAL HISTORY

On January 6, 2015, the Court granted in part Netlist's motion for a preliminary injunction.  (Dkt. No. 251).  On January 12, 2015, the Court amended the Order, set a bond amount of $900,000, and enjoined Diablo "from manufacturing, using, distributing and/or selling the Rush and Bolt integrated circuits manufactured by or obtained from Diablo, including any such Rush and Bolt integrated circuits contained in or provided along with the ULLtraDIMM module, the IBM eXFlash module, or any other product."  Prelim. Inj. Order at 20.  Since January 6, 2015, Diablo has abided by the Court's injunction.  Because the Rush and Bolt chipset (sold together as a single product) represent Diablo's only product, the injunction has denied Diablo of any revenues for nearly three months.  *See* Trial Tr. at 2307:16-2308:4 (post-trial testimony of M. Parziale on 3/24/15) (sealed).

/ /


McDermott Will & Emery LLP
Attorneys At Law
Menlo Park

A trial in this matter was held from March 9, 2015 through March 25, 2015. Both Netlist and Diablo moved for judgment as a matter of law under FED. R. CIV. P. 50(a). The Rule 50(a) motions were denied without prejudice. Trial Tr. at 1982: 2-9 (3/19/15) (denying all Rule 50(a) motions without prejudice to re-urge following a verdict). On March 25, 2015, the jury reached a verdict that Diablo was not liable for breach of contract, that Diablo was not liable for trade secret misappropriation, that Dr. Hyun Lee was not an inventor on the '917 patent, and that Netlist was entitled to nominal damages in the amount of $2 for Netlist's claims of trademark infringement and false/misleading advertising. (Dkt. No. 420).

Following the jury's verdict, Netlist argued that "nothing has changed." Trial Tr. at 2362:20-25 (3/25/15); *see also* Trial Tr. at 2360:22-2361:10 (3/25/15). During a hearing the day of the verdict, Netlist repeated the breach of contract assertions set forth in its Rule 50(a) motion and indicated that it intends to file a motion for judgment as a matter of law or move for a new trial under FED. R. CIV. P. 50(b). *Id*. at 2361:11-20; 2362:20-2363:13. The Rules of Civil Procedure contemplate Rule 50(b) motions being filed 28 days following entry of judgment. At the time of this filing, no Rule 50(b) motions are on file.

### III.   ARGUMENT

#### A.   Legal Standard

Preliminary injunctive relief is appropriate only where there is a likelihood of success on the merits. *Winter v. Nat'l Resources Defense Council, Inc.*, 555 U.S. 7, 21 (2008). "[S]ound judicial discretion may call for modification of the terms of an injunction decree if the circumstances, whether of law or fact, obtained at the time of its issuance have changed, or new ones have arisen." *Mariscal-Sandoval v. Ashcroft*, 370 F.3d 851, 859 (9th Cir. 2004) (quoting *Sys. Fed'n No. 9 Railway Employees' Dept. v. Wright*, 364 U.S. 642, 647–48 (1961)). "A party seeking modification or dissolution of an injunction bears the burden of establishing that a significant change in facts or law warrants revision or dissolution of the injunction." *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000).

/ /

/ /

**B.    The Preliminary Injunction Should be Dissolved in Light of the Jury Verdict**

The jury's verdict establishes that Netlist is unlikely to succeed on the merits.[1] The preliminary injunction issued solely on Netlist's breach of contract claims. Prelim. Inj. Order at 12.

**1.    The Court Now Has the Benefit of the Full Trial Record**

On numerous occasions the Court reaffirmed that the preliminary injunction was granted based on the limited record before it at the time the motion was decided and the Court declined to elevate its preliminary likelihood of success findings over the need for a full presentation of the evidence at trial. *See, e.g.,* Pre-Trial Tr. (1/13/15) at 37:15-38:2 (Court commentary explaining the benefit of a jury verdict in response to Netlist's request to file a motion on the issue of breach of contract following the issuance of the preliminary injunction); (Dkt. No. 421 at 1) (referencing in the indicative ruling pursuant to FRCP 62.1 that the preliminary injunction only granted based on the record that was before the Court at that time).

Now, following the two week trial, the Court has the benefit of the full record and the jury's verdict after considering that record. The record before the Court today is far different than the limited record before the Court in January and, as the jury concluded, establishes that Diablo's conduct was permitted under the contracts. Dissolution of the injunction is a natural consequence of changed circumstances with respect to the breach of contract claims.

**2.    In Finding No Breach of Contract, the Jury Resolved Factual Issues**

---

[1] Although the instant motion focuses on the likelihood of success factor, there are also ample grounds to conclude that none of the four preliminary injunction factors are satisfied. For example, there is no longer sufficient evidence of irreparable harm to leave the preliminary injunction intact. Importantly, Netlist repeatedly argued during the pre-trial proceedings that it should be allowed to present evidence of harm to the jury. *See, e.g.,* Pre-Trial Tr. (2/25/15) at 47:9-48:10 ("We need to be able to tell our story of, number one, in terms of proof and also the story of how we've been harmed."). Evidence of Netlist's harm was ultimately admitted, *id*. at 48:24-49:5, and was subsequently considered by the finder of fact, but the jury declined to find any cognizable harm. The factor addressing the balancing of hardships also tips in Diablo's favor because while the injunction inflicted great harm on Diablo, the jury found no harm to Netlist. Similarly, the public has no interest in enjoining conduct that is not harmful. If anything, the public interest weighs in favor of allowing Diablo to restore its product to market and again deliver goods to its downstream customers. *See Apple v. Samsung*, No. 11-cv-1846, 2012 WL 4490558, at *2 (N.D. Cal. Oct. 1, 2012).

At the outset of the trial, the Court held that the contract was unambiguous. (Dkt. No. 386 at 2). The parties were instructed not to argue to the meaning of the words of the Supply Agreement to the jury. *Id.* ("In light of Netlist's position in its proffer, and the Court's determination that no party has identified any terms the Court considers ambiguous, the Court ORDERS that neither party may offer extrinsic evidence as to the meaning or proper interpretation of the Supply Agreement"). Instead, the words of the agreement were given their plain and ordinary meaning.

The jury had copies of the Supply Agreement in the juror binders, and both Netlist and Diablo presented fact witness, expert witness and documentary evidence with respect to Diablo's conduct to the jury. The Court instructed the jury on the law applicable to Netlist's causes of action for breach contract. Each side then argued their respective positions during Closing Arguments. Netlist argued that Diablo's conduct constituted breach of contract. *E.g.*, Trial Tr. at 2110:15-2111:5; 2125:22-2126:21; 2129:24-2130:9 (Closing Arguments on 3/23/15). Diablo argued to the jury that its conduct was permitted under the contract. *E.g.*, Trial Tr. at 2228:5-2236:25 (Closing Arguments on 3/23/15). The jury was the ultimate arbiter.

Furthermore, the resolution of whether or not Diablo's conduct constituted a breach of contract necessarily involved determinations of witness credibility. For example, Netlist's expert Mr. Jansen and Diablo's expert Mr. McAlexander each testified as to the similarities and differences between the RD/ID chipset and the Rush/Bolt chipset. The jury inherently had to make factual findings, apply those facts to the language of the agreements, use the Court's instructions, and conclude whether or not Diablo breached its obligations in the agreements. The jury did just that and set forth its conclusions in the special verdict form. The full body of evidence and the jury's factual determinations compel the conclusion that there are now changed circumstances that warrant dissolution of the preliminary injunction.

**C. Motion Practice Under Rule 50(b) Does Not Warrant Keeping the Preliminary Injunction in Place**

Netlist's argument that "nothing has changed" follows the same rationale as its Rule 50(a) motion addressing the ID chips. While Netlist may renew or embellish those arguments in Rule

- 5 -

DIABLO'S MOTION TO DISSOLVE
PRELIMINARY INJUNCTION
CASE NO. 13-CV-05962 YGR

50(b) motion practice, those pleadings are not yet on file. Because Netlist's Rule 50(b) motions are not yet before the Court, the Court cannot rule that the merits of Netlist's post-trial motions or find that any future motion supports the likelihood of success on the merits finding that is a predicate to maintaining the Preliminary Injunction. While there will be ample time to brief and argue the Rule 50(b) motions, in the interim the Court should exercise its power to prevent further harm to Diablo by dissolving the preliminary injunction.

When a defendant succeeds on the merits of the claims that formed the basis for the preliminary injunction, the preliminary injunction should be dissolved. *Arnold v. Wells Fargo Bank, N.A.*, No. 13-cv-5992, 2014 WL 6071414, at *4 (W.D. Wash. Nov. 13, 2014) ("The Court concludes that the preliminary injunction shall be dissolved because Defendants have succeeded on the merits of all of the [defendant's] claims."). The recent *Apple v. Samsung* decision presented a procedural posture analogous to the circumstances encountered here. In that case, Judge Koh preliminarily enjoined sales of a Samsung product based on a finding that Apple was likely to succeed on its claim of patent infringement as to that product. The jury, however, found the Samsung product did not infringe. Samsung moved to dissolve the injunction. Apple opposed, arguing that its Rule 50(b) motions could still result in a judgment of infringement and an attendant permanent injunction. *Apple v. Samsung*, No. 11-cv-1846, 2012 WL 4490558, at *2 (N.D. Cal. Oct. 1, 2012). Judge Koh rejected Apple's position: "Moreover, the Court does not agree with Apple that Samsung's motion for dissolution of the June 26th Preliminary Injunction cannot be fairly decided without resolving Apple's post-trial motions. Even if Apple ultimately prevails on its post-trial motions, any permanent injunction would be prospective and not retroactive. Furthermore, the public has no interest in enjoining a non-infringing product, and thus any market disruption caused by dissolution would be insignificant compared to Samsung's interest in restoring its product to market." *Id*. at *2. Netlist's position is analogous to Apple's rejected position. The *possibility* that, at some undefined point in the future, the Court *might* grant a yet-to-be-filed Rule 50(b) motion by Netlist, which *might* somehow lead to a permanent injunction coextensive with the preliminary injunction, is insufficient to overcome the *fact* that Netlist lost the jury verdict on the full evidentiary record. Netlist may not be completely

foreclosed from success, but it cannot be said to be *likely to succeed*, and consequently the preliminary injunction cannot survive. As Judge Koh explained in the order dissolving the preliminary injunction against Samsung, "any permanent injunction would be prospective and not retrospective." *Id*. at *2. Thus, the possibility that the Court might permanently enjoin Diablo from some conduct does not save the preliminary injunction.

## IV. CONCLUSION

For the foregoing reasons, Diablo respectfully requests that the Court dissolve the January 12, 2015 preliminary injunction.

Dated: March 30, 2015

Respectfully submitted,

McDERMOTT WILL & EMERY LLP

By: */s/ Fabio E. Marino*
    Fabio E. Marino

Attorneys for Defendant and Counterclaim-Plaintiff DIABLO TECHNOLOGIES, INC.