**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **NETLIST, INC.,**<br>Plaintiff,<br>vs.<br>**DIABLO TECHNOLOGIES, INC.,**<br>Defendant. | Case No.: 13-cv-5962 YGR<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW ON EQUITABLE RELIEF UNDER UCL CLAIM** |

On July 1, 2013, Plaintiff Netlist Inc. ("Netlist") brought this action against Defendant Diablo Technologies, Inc. ("Diablo"). In the operative Second Amended Complaint, filed March 21, 2014, Netlist alleged claims against Diablo for misappropriation of trade secrets, breach of contracts, and unfair competition under the California Unfair Competition Law ("UCL"), California Business & Professions Code section 17200, based on that alleged conduct, in addition to claims for correction of inventorship of a patent, and claims under the Lanham Act for trademark infringement and false and misleading advertising.

Netlist's claims were tried to a jury, with the exception of its UCL claim. Netlist now seeks a permanent injunction based on violation of the UCL. In accordance with the jury's verdict, and after considering all of the testimony, documentary evidence,[1] and arguments of counsel presented during and after trial, the Court makes the following findings of fact and conclusions of law:

---

[1] The Court **SUSTAINS** the objections of Netlist (Dkt. No. 452) and **STRIKES** the Declaration of Lou Marchant, Senior Solution Sales Executive for Lenovo (United States), Inc. (Dkt. No. 450-3), as well as the brief and Declaration of Steven J. Corr filed on behalf of Non-parties SanDisk Corporation and Smart Storage Systems, Inc. (Dkt. No. 448, 449).

**PROCEDURAL BACKGROUND**

1. Netlist moved for and was granted a preliminary injunction, which commenced on January 12, 2015. The preliminary injunction and was stayed by the Federal Circuit on March 26, 2015.

2. A jury trial commenced on March 9, 2015. Both parties presented witness testimony and the Court admitted documentary and physical exhibits.

3. On March 25, 2015, the jury returned its verdict in favor of Diablo on the claims for breach of contracts, trade secret misappropriation, and correction of inventorship, and in favor of Netlist on its claims of trademark infringement and Lanham Act false advertising. (Dkt. No. 420.) The jury's verdict provided as follows:

*On Netlist's Claims for Breach of Contract:*

    a. Netlist and Diablo entered into a contract referred to as the Mutual Non-Disclosure Agreement.

    b. Diablo did not breach the Mutual Non-Disclosure Agreement.

    c. Netlist was not harmed by Diablo's conduct with respect to the Mutual Non-Disclosure Agreement.

    d. Netlist and Diablo entered into a contract referred to as the Development and Supply Agreement.

    e. Diablo did not breach the Development and Supply Agreement.

    f. Netlist was not harmed by Diablo's conduct.

*On Netlist's Claim for Misappropriation of Trade Secrets:*

    g. None of the eight alleged trade secrets was "secret" information.

*On Netlist's Claim for Correction of Inventorship:*

    h. Netlist did not prove that Dr. Hyun Lee should be added as a named inventor of the '917 patent.

*//*

*//*

*On Netlist's Claim for Trademark Infringement*

    i. Netlist proved its claim for trademark infringement against Diablo and was entitled to nominal damages in the amount of $1.00.

*On Netlist's Claim for False and Misleading Advertisement*

    j. Netlist proved its claim for false and misleading advertisement against Diablo and was entitled to nominal damages in the amount of $1.00.

4. Upon motion by Diablo and full briefing by the parties, as well as the parties' arguments at the hearing on April 24, 2015, the Court dissolved the preliminary injunction in light of the jury's verdict, by order issued April 24, 2015.

5. Remaining for decision by the Court is Netlist's claim under California Business & Professions Code section 17200 ("UCL claim").

6. Netlist's post-trial briefing rests its UCL claim entirely on the theory that Diablo breached the parties' Supply Agreement and that the breach gave Diablo a "head start" which constitutes "unfair" competitive conduct in violation of the UCL. Based on this theory, Netlist contends that it is entitled to a permanent injunction for a period of 10 months and 27 days enjoining the manufacture and sale of Diablo's Rush and Bolt chips, and any integrated circuits derived from or based on the current versions of the Rush and Bolt chips.

7. Netlist asserts that the Court may "set aside the jury's erroneous breach of contract verdict based on Netlist's reserved 50(a) motion or its forthcoming 50(b) motion for judgment as a matter of law." (Dkt. No. 446 at 3 n.1.). The Court denied all the parties' oral Rule 50(a) motions (TR 1982:2-13). The Court declined to rule on Netlist's written Rule 50(a) motion filed at the close of all the evidence in the case in favor of waiting for a jury verdict. (TR 1969-70.) The Court has no Rule 50(b) motion before it at this time.[2]

---

[2] The Court follows the "desirable" practice of refraining from ruling on a 50(a) motion until the jury has returned a verdict, in favor of a renewed 50(b) motion post-verdict. *Therrell v. Georgia Marble Holdings Corp.*, 960 F.2d 1555, 1569 (11th Cir. 1992) quoting 9 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2533, at 586 (1971) ("the appellate courts have repeatedly said that it is usually desirable to take a verdict, and then pass on the sufficiency of the evidence on a post-verdict motion"). The Court notes that no briefing or hearing schedule on the

**FINDINGS OF FACT**

1. Netlist is a Delaware corporation with its principal place of business at 175 Technology Drive, Irvine, California 92618. The company was founded in 2000 by C.K. "Chuck" Hong, Christopher Lopes and Jay Bhakta. The company's mission is to create high performance memory products technologies for the computing industry.

2. Defendant Diablo is a Canadian corporation with its principal place of business at 80 Aberdeen Street, Suite 401, Ottawa, Ontario, K1S 5R5, Canada. It is a developer of customized semiconductor memory chips for the computing server industry.

3. Netlist and Diablo entered into a Mutual Non-Disclosure Agreement on March 20, 2008, to discuss a possible collaboration between the two companies. (Exh. 25.)

4. Netlist and Diablo entered into a Development and Supply Agreement ("Supply Agreement") with an effective date of September 10, 2008. (Exh. 53.)

5. By its verdict, the jury found that there was no breach of either the Mutual Non-Disclosure Agreement or the Supply Agreement. (Jury Verdict, Dkt. No. 420, at 2.)

**CONCLUSIONS OF LAW**

The UCL authorizes the Court to "make such orders or judgments… as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." Cal. Bus. & Prof. Code § 17203. Because a UCL claim is equitable in nature, the Court, rather than a jury, must decide whether there was a UCL violation. *Bradstreet v. Wong,* 161 Cal.App.4th 1440, 1458 (2008). "[I]n a case where legal claims are tried by a jury and equitable claims are tried by a judge, and the claims are 'based on the same facts,' in deciding the equitable claims 'the Seventh Amendment requires the trial judge to follow the jury's implicit or explicit factual determinations.' "

---

written Rule 50(a) motion was ever set, nor was one sought by Netlist. Remaining issues can be raised in a Rule 50(b) motion.

*Los Angeles Police Protective League v. Gates,* 995 F.2d 1469, 1473 (9th Cir. 1993) (quoting *Miller v. Fairchild Indus.,* 885 F.2d 498, 507 (9th Cir. 1989), *cert. denied,* 494 U.S. 1056 (1990)).

A "common law violation such as breach of contract is insufficient," standing alone, to support a UCL claim. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010). "A breach of contract claim…may only form the basis of a section 17200 [UCL] claim if the breach itself is 'unlawful, unfair, or fraudulent.'" *Puentes v. Wells Fargo Home Mortg., Inc.,* 160 Cal.App.4th 638, 645 (2008).

Under the UCL, an "unfair" act is one which "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law." *Cel-Tech Commc'ns v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999). In determining what is "unfair" under the UCL, courts look to parallel provisions in the Federal Trade Commission Act, 15 U.S.C. § 45(a), particularly where the claims at issue allege unfair competition between business competitors. *Id.* at 185. The "antitrust laws… were enacted for the protection of *competition*, not *competitors*." *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 110 (1986) (internal citations omitted) (emphasis in original). Thus, "injury to a competitor is not equivalent to injury to competition," and standing alone does not establish an "unfair" act under the UCL. *Cel-Tech*, 20 Cal. 4th at 186. Rather, a Section 17200 claim based on the unfair prong must "be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Id.* at 186-87; *see also Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1005 (N.D. Cal. 2009) ("breach of contract claim…could constitute an unfair business practice… [where it alleged] systematic breach of contract and unauthorized renewal of obsolete products [that] would directly and serious impact competition in defendant's industry"). "[W]hen the plaintiff is a direct competitor of the defendant and invokes Section 17200's 'unfair' prong, the word 'unfair'… means conduct that… otherwise significantly threatens or harms competition." *Worldwide Travel, Inc. v. Travelmate US, Inc.*, 2015 WL 1013704, at *11 (S.D. Cal. 2015) (internal citations omitted).

Here, the Court does not disturb the jury's findings that Diablo did not breach the Supply Agreement and accepts those findings for the UCL claim. It follows from the jury's findings that

5

Netlist cannot establish the threshold showing of a predicate breach of contract for purposes of relief under the UCL.

## CONCLUSION

Netlist failed to establish a predicate breach of contract to support its UCL claim. Consequently, Diablo is entitled to have judgment entered in its favor on Netlist's UCL claim. The Court will enter judgment on this claim, as well as the others decided by the jury's verdict, forthwith.

**IT IS SO ORDERED.**

Dated: April 24, 2015

_____
**HON. YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT JUDGE**