**REDACTED – PUBLIC VERSION**

FABIO E. MARINO (SBN 183825)
fmarino@mwe.com
L. KIERAN KIECKHEFER (SBN 251978)
kkieckhefer@mwe.com
NITIN GAMBHIR (SBN 259906)
ngambhir@mwe.com
BARRINGTON DYER (SBN 264762)
bdyer@mwe.com
TERI H.P. NGUYEN (SBN 267498)
thpnguyen@mwe.com
NATALIE BENNETT (*Admitted Pro Hac Vice*)
nbennett@mwe.com
McDERMOTT WILL & EMERY LLP
275 Middlefield Road, Suite 100
Menlo Park, CA 94025-4004
Telephone: 650 815 7400
Facsimile: 650 815 7401

RUSSELL HAYMAN (SBN 110643)
rhayman@mwe.com
JON DEAN (SBN 184972)
jdean@mwe.com
McDERMOTT WILL & EMERY LLP
2049 Century Park East, 38th Floor
Los Angeles, CA 90067
Telephone: 310-277-4110
Facsimile: 310-277-4730

Attorneys for Defendant
DIABLO TECHNOLOGIES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| NETLIST, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>DIABLO TECHNOLOGIES, INC., a Canadian corporation,<br><br>Defendant. | CASE NO. 4:13-cv-05962 YGR<br>(Related Case No. 4:13-cv-05889 YGR)<br><br>**DIABLO TECHNOLOGIES, INC.'S MOTION TO ENFORCE PRELIMINARY INJUNCTION BOND**<br><br>Date: June 9, 2015<br>Time: 2:00 p.m.<br>Ctrm: 1, 4th Floor<br>Judge: Hon. Yvonne Gonzalez Rogers |

**REDACTED – PUBLIC VERSION**

# NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant Diablo Technologies, Inc. ("Diablo") hereby moves the Court to issue an order requiring Netlist, Inc. ("Netlist") to pay Diablo the full security bond amount of $900,000. This motion is based on the memorandum of points and authorities below, the accompanying Declaration of Jeffrey McMullen with supporting Exhibits, and the previously filed Declaration of Michael Parziale with supporting exhibits (Dkt. Nos. 438-3 through 438-10), all papers and pleadings on file in this action, and any oral argument presented before this motion is taken under submission by the Court.

Dated: May 4, 2015

Respectfully submitted,

McDERMOTT WILL & EMERY LLP

By: */s/ Fabio E. Marino*
    Fabio E. Marino

    Attorneys for Defendant
    DIABLO TECHNOLOGIES, INC.

# MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Diablo Technologies, Inc. ("Diablo") respectfully submits this memorandum in support of its motion to recover financial losses Diablo suffered as a result of the preliminary injunction. The Court previously ordered Netlist to post a $900,000 bond to cover Diablo's injuries if the injunction turned out to be wrongful. (Dkt. No. 277 at 20). Diablo is entitled to recover the full bond amount and now moves the Court for an order enforcing execution of the bond. *See Nintendo of America, Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032, 1034 (9th Cir. 1994).

To recover the bond pursuant to Federal Rule of Civil Procedure 65(c), Diablo needs to show that it was "wrongfully enjoined" and was injured due to the preliminary injunction. In this case, Netlist sought and obtained an injunction based on a limited record that was subsequently dissolved by the Court after the predicate claim was rejected at trial by the jury after a full presentation of the evidence. Consequently, there is little doubt that Diablo was wrongfully enjoined and suffered damages as a result. In such circumstances, there is a "rebuttable presumption that a wrongfully enjoined party is entitled to have the bond executed and recover provable damages up to the amount of the bond." *Id.* at 1034-36. Because, Diablo's actual damages far exceed the bond amount, the full bond amount should be paid to Diablo.

## I. PRELIMINARY STATEMENT OF FACTS

Diablo currently sells a single product, the Rush and Bolt chipset, to a single customer. Declaration of Mike Parziale dated March 30, 2015 Pursuant to the Court's Request ("Parziale Decl.") at ¶ 3 (Dkt. No. 438-3); Declaration of Jeffrey McMullen dated May 4, 2015 in support of Diablo's Motion to Increase and Enforce the Security Bond ("McMullen Decl.") at ¶ 6 (attached as Exhibit A1); *Tr.* 2308:2-11 (Parziale). The preliminary injunction order foreclosed all sales of the Rush and Bolt chipset to SanDisk from January 6, 2015 until March 26, 2015 when the order was stayed. Exhibit A1 (McMullen Decl.) at ¶¶ 6, 14. Diablo's expected sales revenue for the Rush and Bolt chipsets for the months of January and February 2015 was Redacted Redacted. Exhibit A1 (McMullen Decl.) at ¶ 6; *Tr.* 2310:8-2311:10 (Parziale). Diablo's anticipated gross margin on these products Redacted

1  [Redacted] Exhibit A1 (McMullen Decl.) at ¶ 8; *see also Tr*.
2  2311:11-15 (M. Parziale testifying that Diablo's [Redacted]). Diablo did not sell any of [Redacted]
3  [Redacted]
4  [Redacted] Exhibit A1 (McMullen Decl.) at ¶ 6; *see also* January 12, 2015 Letter
5  from Ben Tessorle to Riccardo Badalone ("SanDisk Letter") (attached as Exhibit A2).
6  Accordingly, using the most conservative figures, Diablo's gross profit loss from January to
7  March of 2015 was at least [Redacted] *See* Exhibit
8  A1 (McMullen Decl.) at ¶ 8.
9        The dissolution of the injunction does not eliminate the financial harms the injunction
10 caused. In particular, Diablo has not been able to immediately re-enter the market with sales at
11 pre-injunction levels. Exhibit A1 (McMullen Decl.) at ¶ 9. Instead, Diablo's anticipated "ramp
12 up" period previously estimated to be three months [Redacted]
13 *Id*. During the time Diablo and SanDisk re-establish their relationship, Diablo expects to lose [Redacted]
14 [Redacted]. *Id*. (internal citation omitted).
15       Furthermore, during the period the preliminary injunction was in place Diablo was [Redacted]
16 [Redacted]
17 [Redacted]. Exhibit A1 (McMullen Decl.) at ¶ 15; *see also Tr*. 2321:1-11 (Parziale). The losses
18 sustained during the January to March 2015 time period also forced Diablo to [Redacted]
19 [Redacted]
20 [Redacted]. Exhibit A1
21 (McMullen Decl.) at ¶ 14. [Redacted]
22 [Redacted]. *Id*. [Redacted]
23 [Redacted] as well as cause qualitative harms. Exhibit A1 (McMullen Decl.) at ¶ 16.
24 **II.    RELEVANT PROCEDURAL BACKGROUND**
25       On January 12, 2015, the Court amended the Order granting the preliminary injunction,
26 setting a bond amount of $900,000. (Dkt. No. 277 at 20). The Court found that net profits were
27 the correct measure for purposes of setting the bond amount.[1] *Id*. at 20 n.10. On January 15,

---

[1] Netlist argued in its brief in support of the bond amount that Diablo's net profit margin was

2015, Netlist posted a security bond of $900,000. (Dkt. No. 289).

On March 25, 2015, after two weeks of trial and a full presentation of the evidence, the jury found that Diablo had not breached any contract and had not misappropriated any of the alleged trade secrets. (Dkt. No. 420). Diablo promptly moved to dissolve the preliminary injunction on the basis that "[d]issolution of the injunction is a natural consequence of changed circumstances with respect to the breach of contract claims." (Dkt. No. 440 at 4). Following a hearing on April 24, 2015, the Court dissolved the preliminary injunction. (Dkt. No. 457 at 2). In doing so, the Court recognized that the jury's verdict undermined Netlist's likelihood of success on the claims underlying Netlist's request for injunctive relief. (Dkt. No. 457 at 2). Diablo now seeks to recover the full security bond to compensate harms Diablo actually suffered from being wrongfully enjoined at Netlist's request.

## III. ARGUMENT

### A. The Plain Language of Rule 65 and the Rebuttable Presumption in Favor of Awarding Damages to a Wrongfully Enjoined Party Warrant Enforcing the Security Bond

#### 1. Legal Standard

Rule 65(c) does not "explicitly discuss how dissolution of the injunction affects payment of the security," *Global Naps, Inc. v. Verizon New England, Inc.*, 489 F.3d 13, 20 (1st Cir. 2007), but in the Ninth Circuit "the party enjoined will usually recover damages." *Nintendo of America, Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032, 1037 (9th Cir. 1994). Rule 65(c) instructs an applicant seeking an injunction to make funds available "for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Ninth Circuit explains that the reasons

---

around 15%. (Dkt. No. 260 at 3) ("[T]he net profit of several companies generally comparable to Diablo is roughly 15%.") (citing to the Declaration of Jim Handy at ¶ 6). The record now reflects that Netlist's assumption of a 15% margin is inaccurate. Both Mr. Parziale and Mr. McMullen attested under oath that the profit margin is Redacted. Exhibit A1 (McMullen Decl.) at ¶ 8; *Tr.* 2311:11-15 (Parziale). To the extent the Court relied on Netlist's inaccurate 15% margin figure, its methodology can be corrected after the trial based on the full record. *See, e.g., Nintendo of America, Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032, 1034 (9th Cir. 1994). In *Nintendo* the district court granted the preliminary injunction while initially setting the bond amount at $100,000. *Id.* The district court later raised that amount to $5 million and then to $15 million after holding a "lost profits" hearing following the trial. *Id.*

1 underlying this Rule include assuring district court judges that defendants will receive
2 compensation for their damages when it is later determined they were wrongfully enjoined and
3 discouraging parties from requesting injunctions based on flimsy legal grounds. *Nintendo*, 16
4 F.3d at 1037.

5 Importantly, to find that a party is "wrongfully enjoined" the Court does not need to find
6 that the injunction was "wrongfully issued." *Id.* at 1036 n.4. Rather, "a party has been
7 wrongfully enjoined within the meaning of Rule 65(c) when it turns out the party enjoined had
8 the right all along to do what it was enjoined from doing." *Id.* All that is required is a finding
9 that the likelihood of success determination did not translate into actual success on the full record,
10 as is the case here.

11 Rule 65.1 governs proceedings against a surety bond and provides that "[t]he surety's
12 liability may be enforced on motion without an independent action." FED. R. CIV. P. 65.1. This
13 "summary procedure" is understood to serve the purpose of "assuring the enjoined party that it
14 may readily collect damages from the funds posted or the surety provided in the event that it was
15 wrongfully enjoined, without further litigation and without regard to the possible insolvency of
16 the assured. . . . " *Global Naps*, 489 F.3d at 21 (quoting *Continuum Co. v. Incepts, Inc.*, 873 F.2d
17 801, 803 (5th Cir. 1989)).

18 In the Ninth Circuit there is a "rebuttable presumption that a wrongfully enjoined party is
19 entitled to have the bond executed and recover provable damages up to the amount of the bond."
20 *Nintendo*, 16 F.3d at 1036 (internal citations omitted). The burden is on the party seeking
21 damages to establish with "reasonable certainty that it was damaged by the issuance of the
22 injunction." *Id*. at 1038. The enjoined party may recover on the "damages actually and
23 proximately resulting from the effect of the injunction itself." *Sletten v. Navellier Series Fund*,
24 No. 03-cv-167, 2006 WL 3717375, at *1 (D. Nev. Dec. 14, 2006) (citing *Nintendo*, 16 F.3d at
25 1036); *see also Matek v. Murat*, 862 F.2d 720, 733 (9th Cir. 1988), *abrogated on other grounds,*
26 *Holden v. Hagopian*, 978 F.2d 1115 (9th Cir. 1992).

27 //
28 //

### 2. Diablo was Wrongfully Enjoined and Suffered Injury as a Result of the Injunction

In this case the preliminary injunction was premised on allegations of breach of contract. (Dkt. No. 277 at 12). Following the trial, however, the jury found that Diablo was not liable for breach of contract or misappropriation of trade secrets. (Dkt. No. 420); (Dkt. No. 457 at 2). Consequently, Diablo was "wrongfully enjoined" under Rule 65(c). Diablo had the right to sell the Rush and Bolt chipset all along, because the alleged breach of contract that served as the sole predicate to the preliminary injunction never occurred. *Nintendo*, 16 F.3d at 1036.

To recover the security bond, the wrongfully enjoined party must prove "by a preponderance of the evidence that it sustained actual injury as a result of the wrongful issuance of the preliminary injunction." *Nintendo*, 16 F.3d at 1038. Diablo has met this requirement. The preliminary injunction proximately caused Diablo's injury because [Redacted] *See* Exhibit A2 (SanDisk Letter). SanDisk's reasons for [Redacted]s are expressly stated:

[Redacted]

The record here demonstrates that the Court's Order granting injunctive relief—issued pursuant to Netlist's motion—was the *but-for* cause of Diablo's lost sales. If not for the injunction precluding sales to SanDisk, Diablo would not have lost revenue totaling [Redacted]. (Dkt. No. 438-3 at ¶ 9) (Parziale Decl.) (identifying purchase order amounts for January and February 2015); *see generally* Exhibit A1 (McMullen Decl.).

### B. Diablo has Proven Damages that Exceed the Full Security Bond Amount

Diablo is entitled to enforcement of the full security bond amount, an established course of relief in the Ninth Circuit. *See Sionix Corp. v. Moorehead*, 299 F.Supp.2d 1082, 1090 (S.D. Cal. 2003) (enforcing the full amount of the security bond based on the rebuttable presumption that a wrongfully enjoined party is entitled to execute on the bond); *see also Lewis Galoob Toys*,

1  *Inc. v. Nintendo of Am. Inc.*, No. 3:90-cv-01440, 1992 U.S. Dist. LEXIS 16531, *6 (N.D. Cal.
2  July 6, 1992) (concluding defendant in copyright infringement case was entitled to $15 million in
3  damages caused by a preliminary injunction that was later dissolved), *aff'd*, *Nintendo*, 16 F.3d at
4  1039 (affirming an award of the full bond amount in favor of the wrongfully enjoined party).

In January 2015, without the benefit of a full record, the Court set a bond amount of $900,000 based on Netlist's expert representation that Diablo's profit margin was approximately 15% (Dkt. No. 261-1 at ¶ 6). At trial, Diablo presented evidence that its expected profit margin for those sales far exceeded the 15% estimated by Netlist's expert. *Tr.* 2311:11-15 (Parziale); Exhibit A1 (McMullen Decl.) at ¶ 8. More than three months later, Diablo's anticipated losses have been realized— and they far exceed the amount of the bond. Taking the months of January and February alone, SanDisk actually [Redacted] *Tr.* 2308:19-25, 2310:8-10, 2310:24-2311:10 (Parziale); (Dkt. No. 438-3 at ¶ 7) (Parziale Decl.). Multiplying [Redacted] units times the chipset price/unit of [Redacted], which is approximately equivalent to the sales amount the Court used to calculate the bond amount. Applying the most conservative profit margin of [Redacted], Diablo has proved that for the months of January and February alone, Diablo actually lost [Redacted] in gross profit as a result of the preliminary injunction.[2] Exhibit A1 (McMullen Decl.) at ¶ 8.



---

[2] The [Redacted] figure does not include the forecasted sales for March 2015 or the ongoing losses Diablo faces during its period of "ramp up" in the next three months. *See* Exhibit A1 (McMullen Decl.) at ¶ 9. This figure does not include the losses Diablo will sustain as a result of being forced to [Redacted] *id.* at ¶ 13, and it does not include the [Redacted] [Redacted]. *Id.* at ¶¶ 10-12.

To recover under the bond, Diablo need only "demonstrate injury as a consequence of the injunction." *Matek*, 862 F.2d at 733. In addition to the monetary injury in the millions of dollars, Mr. McMullen has further sworn to the non-monetary harm Diablo has sustained in terms of Diablo's business reputation and the company's morale while the injunction was in effect. Exhibit A1 (McMullen Decl.) at ¶ 16. Accordingly, the circumstances warrant awarding the full $900,000 bond amount to protect Diablo from further hardship after it marshaled and continues to marshal an expensive legal campaign to prove that it is not liable for breach of contract or misappropriation of trade secrets. *See Edgar v. MITE Corp.*, 457 U.S. 624, 649 (1982) (explaining that generally the bond amount should be sufficient "to protect his adversary from loss in the event that future proceedings prove that the injunction issued wrongfully"); *see also Apple, Inc. v. Samsung Electronics Co., Ltd.*, No. 12-cv-630, 2012 WL 2576136, at *9 (N.D. Cal. July 3, 2012) (setting the bond amount at "Samsung's own estimated lost profits" so as to provide adequate protection from "the potential harm if the injunction was wrongfully issued").

Diablo's requested relief is supported by specific evidence in the record verifying Diablo's provable damages, including the loss of [Redacted] while the injunction was in effect. For example, attached to the Declaration of Mike Parziale, Diablo submitted the SanDisk purchase orders it had in hand for sales of the Rush and Bolt chipset to SanDisk (Dkt Nos. 438-6 & 438-8) as well as forecasted sales for additional months in 2015 (Dkt Nos. 438-5). Diablo has likewise submitted the letter from SanDisk (dated January 12, 2015) [Redacted] Exhibit A2 (SanDisk Letter). Thus, it is beyond reasonably certain that Diablo's losses from January 6, 2015 to March 26, 2015 exceed the $900,000 security bond.[3]

Lastly, given that the $900,000 security bond is only a fraction of Diablo's proven damages, equity favors awarding the full bond amount. The Rule 65(c) standard is intended to

---

[3] In Netlist's bond submission dated January 7, 2015, Mr. Handy assumed that the applicable profit margin for purposes of calculating the bond was 15%. (Dkt. No. 261-1, ¶ 6). Even accepting Netlist's proposed methodology and multiplying [Redacted] at a 15% margin for the months of January and February, Diablo's losses would still total almost $893,000. Once the month of March 2015 is also included, Diablo's losses would far exceed $900,000. Under either party's methodology, Diablo is entitled to the full bond amount.

protect a wrongfully enjoined defendant and the facts of this case warrant compensating Diablo for the great damage caused by the preliminary injunction.

### IV.    CONCLUSION

In view of the relevant circumstances, and the articulated Ninth Circuit standard, Diablo is now entitled to have the full amount of the bond executed in its favor.  For the foregoing reasons, Diablo respectfully requests that the Court grant its motion to enforce the security bond of $900,000 and to order that such funds be immediately executed in favor of Diablo.

Dated: May 4, 2015

Respectfully submitted,

McDERMOTT WILL & EMERY LLP

By: */s/ Fabio E. Marino*
  Fabio E. Marino

Attorneys for Defendant and Counterclaim-Plaintiff DIABLO TECHNOLOGIES, INC.

- 9 -

DIABLO'S MOTION TO ENFORCE
PRELIMINARY INJUNCTION BOND
CASE NO. 13-CV-05962 YGR