UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **NETLIST, INC.,**<br><br>    Plaintiff,<br><br>    vs.<br><br>**DIABLO TECHNOLOGIES, INC.,**<br><br>    Defendant. | Case No.: 13-cv-5962 YGR<br><br>**ORDER GRANTING DIABLO'S MOTION TO RECOVER ON PRELIMINARY INJUNCTION BOND (DKT. NO. 465)** |

    Defendant Diablo Technologies, Inc. ("Diablo") moves the Court for an order requiring Netlist, Inc. ("Netlist") to pay Diablo the full amount of the preliminary injunction bond. (Dkt. No. 465.) In connection with its January 12, 2015 Amended Order Granting In Part Motion for Preliminary Injunction, this Court ordered Diablo to post a preliminary injunction bond in the amount of $900,000. (Dkt. No. 277.)

    Rule 65(c) instructs an applicant seeking an injunction to make funds available "for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). To find that a party is "wrongfully enjoined" the Court need not find that the injunction was "wrongfully issued," but only that, upon final disposition of the issues, "the party enjoined had the right all along to do what it was enjoined from doing." *Nintendo of Am., Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d 1032, 1036 (9th Cir. 1994). Thus, to recover on the bond pursuant to Federal Rule of Civil Procedure 65(c), a party must show that it was "wrongfully enjoined" and was injured due to issuance of a preliminary

injunction. *Id.* "[T]here is a rebuttable presumption that a wrongfully enjoined party is entitled to have the bond executed and recover provable damages up to the amount of the bond." *Id.* The claimed damages must be proven with "reasonable certainty." *Nintendo*, 16 F.3d at 1038.

Here, Netlist obtained a preliminary injunction which barred Diablo from "manufacturing, using, distributing and/or selling the Rush and Bolt integrated circuits manufactured by or obtained from Diablo, including any such Rush and Bolt integrated circuits contained in or provided along with the ULLtraDIMM module, the IBM eXFlash module, or any other product." (Dkt. No. 277 at 20.) The Court set a bond amount of $900,000 as the "approximate amount of the net profits Diablo would have received for the chipset sales affected by the preliminary injunction." (*Id.*) The enjoined products were the only products Diablo was manufacturing at the time. (McMullen Dec., Dkt. No. 464-6, at ¶ 6.)

Diablo appealed the Court's preliminary injunction order and sought a stay pending that appeal. On February 10, 2015, the Federal Circuit ordered that Diablo's motion to stay was denied.[1] (*See* Order of the USCA for the Federal Circuit as to Amended Notice of Appeal, Dkt. No. 331, at 3.) After the conclusion of the trial, on March 30, 2015, the Federal Circuit issued an order staying the preliminary injunction temporarily pending this Court's consideration of a motion to dissolve the injunction. (*See* Order of the USCA for the Federal Circuit, Dkt. No. 434.) On April 24, 2015, the Court ordered that the preliminary injunction was dissolved because the predicate claim had been rejected by the jury after a full presentation of the evidence at trial. (Dkt. No. 457.)

Diablo argues that its losses far exceeded the amount of the bond, and so it should recover the entire amount of the bond. Diablo offers evidence that projected gross profits from sales of chipsets for February and January 2015 was four times greater than the amount of the bond. (McMullen Dec. at ¶ 8.) Diablo did not sell the projected chipsets because outstanding orders were cancelled upon issuance of the preliminary injunction. (McMullen Dec. ¶6.) When the Court set the bond, it did so based, in part, on Netlist's expert's opinion that Diablo's profit margin was approximately 15

---

[1] The Federal Circuit granted SanDisk's motion to stay only insofar as the preliminary injunction was directed at SanDisk conduct that did not constitute aiding and abetting a violation by Diablo. (*See* Order of the USCA for the Federal Circuit as to Amended Notice of Appeal, Dkt. No. 331, at 3.)

percent. (Dkt. No. 261-1 at 6). At trial and in connection with this motion, Diablo presented evidence that its expected profit margin for those sales exceeded 15 percent. (Trial Tr. 2311:11-15 [Parziale]; McMullen Dec. at ¶ 8.) Even taking the more conservative 15 percent figure as the correct measure of net profits, based on the lost unit sales during the period of the injunction, the evidence here supports a conclusion that Diablo's lost net profits on the chipsets alone approach or exceed the amount of the bond.

In addition to lost profits, Diablo offers evidence that it was forced to lay off 20 percent of its workforce, and take on millions in loans to cover employee payroll costs, both of which depleted its capital. (McMullen Dec. at ¶¶ 14-15.) Diablo also estimates lost productivity of its remaining employees due to the injunction at several hundred thousand dollars. (McMullen Dec. at ¶ 13.) In addition, Diablo anticipates "ramp-up" costs in order to resume production of chipsets at the same level prior to the preliminary injunction. (McMullen Dec. at ¶ 9.)

The Court finds that, based upon the jury's verdict finding that Diablo did not breach of the Supply Agreement or Non-Disclosure Agreement, Diablo was wrongfully enjoined or restrained by the preliminary injunction. As a consequence it is entitled to have the bond executed in its favor. Diablo has offered evidence that the preliminary injunction, which halted production of its only product on the market to its only customer, damaged Diablo in an amount that exceeds the $900,000.00 bond.

Netlist contends that Diablo has not shown that sales were lost rather than merely deferred and therefore has not met its burden to establish damages. However, Netlist's theory that sales were deferred is just that—a theory, unsupported by evidence. *Cf. Nintendo*, 16 F.3d at 1038 (argument that injunction merely delayed sales, and therefore damages number was inflated, was too speculative to give credence). The theory is contrary to Diablo's evidence of cancelled sales, and is contrary to Netlist's general contention during this litigation of the importance of capturing sales before narrow windows of opportunity close in the rapidly changing world of semiconductor chips. Further, Netlist's contention that Diablo was losing money on a net operating basis, and therefore lacked overall net profits, does not answer the question of lost net profits from sales cancelled due to the preliminary injunction.

## II. CONCLUSION

For the foregoing reasons, Diablo's Motion to Recover On Preliminary Injunction Bond is **GRANTED**. Defendant Diablo Technologies, Inc. may execute on the preliminary injunction bond, in the total sum of $900,000, immediately.

This Order terminates Dkt. No. 465.

**IT IS SO ORDERED.**

Date: September 1, 2015

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**